R. H. COWAN v. AL FAIRBROTHER and wife.

*Contracts in Restraint of Trade—Fraudulent Contracts—Freedom of the Press—Constitution, Art. 1, Sec. 20—Action to Vacate Contract of Sale for Fraud.*

1. A contract whereby the editor and owner of a newspaper sold his printing outfit and newspaper to another, and covenanted not to edit, print, conduct, or be in any manner connected with a newspaper to be published in this State within a specified period, is not invalid as being unduly in restraint of trade or in violation of the constitutional guaranty of freedom of the press.

2. The extent to which individuals and corporations may legally bind themselves not to prosecute a particular business or calling, within a certain territory, discussed.

3. It is not fraudulent to buy property through an agent secretly —that is, to have the agent take the title in his own name and fail to disclose to the vendor that the purchase is made for another.

4. A vendor who seeks the aid of a court of equity to set aside a contract of sale, on the ground of alleged fraud, must offer to return the price received for the property. He must offer to place the vendee in *statu quo*.

5. The freedom of the press, guaranteed by the Constitution, Art. 1, Sec. 20, exempts from censorhip and secures against laws enacted by the legislative department of the government, and measures resorted to by either of the other branches of government, for stifling just criticism or muzzling public opinion. This provision of the Constitution has never been held to be a restriction upon the right to sell anything of value, that is the creature of one's brain, provided society would not suffer by the transaction.

CIVIL ACTION, commenced in the Superior Court of DURHAM County, for an injunction. There was a restraining order issued, and the case was heard by *Graham, Judge, at Chambers*, in Oxford, GRANVILLE County, on July 29, 1896, on plaintiff's motion for an injunction to the final hearing. The summons issued July 1, 1895. The plaintiff alleged that on December 29, 1893, the defendants, Al Fairbrother and M. H. Fairbrother, being then the owners and editors of the Durham *Daily Globe* and the Durham *Weekly Globe*, and of other property connected with and necessary to their publication, and being then engaged in publishing the same, made and executed with John Wilber Jenkins the contract and bill of sale, a copy of which is as follows:

For value received, three thousand and five hundred dollars, this day to us in hand paid, the receipt of which is hereby fully acknowledged, we, Al Fairbrother and Mrs. M. H. Fairbrother, have bargained and sold, and do by these presents, bargain, sell, transfer, assign, set over, deliver and convey unto John Wilber Jenkins, absolutely and free from all claims by us, The Durham *Daily Globe* and The Durham *Weekly Globe*, newspapers now published in said county and state, and also all type, printing

presses, racks, imposing stones, subscription books and accounts thereon, except those which have already been earned and are now due, one iron safe, (Cary,) one caligraph, desks, tables, chairs, inks, paper and all material now on hand, January 1, 1894, the subscription list of said newspapers and all office furniture and materials now used by us in conducting said newspapers, and all now contained in the office of said newspapers, on the northwest corner of Main and Church streets in the town of Durham, and the good will of said newspapers and the business of conducting the same. And we hereby agree with said purchasers and his assigns, each for himself and herself, that for a period of ten years from and after January, 1894, said Al Fairbrother shall not edit, print or conduct a newspaper or magazine, nor be in anywise connected with one printed anywhere in the State of North Carolina, and that for a like period Mrs. M. H. Fairbrother shall not edit, print or conduct a newspaper or magazine, nor be in anywise connected with one anywhere in the County of Durham, said State, without the consent of said purchaser or his assigns.

And we hereby warrant that all of said above-mentioned property is free and clear from all encumbrances of any kind, whatsoever, and that we have good right to convey the same as we have done.

Witness our hands and seals this 29 th day of December, 1893.

AL FAIRBROTHER,    [L. S.]

M. H. FAIRBROTHER.  [L. S.]

That the price paid for the property mentioned in the contract was far greater than the value of the tangible property, and the inducements for paying so great a price was the agreement of the defendants not to edit, print or con-

duct a newspaper, &c., nor to be in any way connected with one, in Durham county.

That on December 30, 1893, John Wilber Jenkins transferred the contract with defendants and the property therein described to Geo. W. Watts; Watts transferred a half interest in same to B. N. Duke on July 25, 1894, and Watts and Duke loaned the property to plaintiff, on July 29, 1895.

That the said defendants had purchased or contracted to purchase the Durham *Recorder*, a newspaper published in the town and County of Durham, and the State of North Carolina, and had assumed the charge and management thereof, and would, on July 1, 1895, edit, print and conduct a newspaper or magazine in the County of Durham or be in some way connected with a newspaper or magazine published in said County of Durham without the consent obtained of the plaintiff or purchaser, John Wilber Jenkins, or of his assigns, contrary to and in violation of the terms and agreements of the contract.

The defendant, Al Fairbrother, admitted the execution of the contract and the receipt of the consideration therein recited, and set up as defenses that the publication of the newspapers referred to in the contract had been in effect abandoned by John Wilber Jenkins and his assigns before defendant entered into any arrangements for taking charge of and managing the publication of a newspaper in Durham.

That plaintiff knew of defendant's intention to connect himself with a newspaper in Durham before he, plaintiff, took any lease from Watts and Duke.

That Geo. W. Watts was hostile in feelings towards defendant prior to the execution of the contract between defendants and Jenkins, and procured Jenkins to enter into the contract with defendants. That this was done

with the fraudulent intent to deceive defendants by representing that Jenkins was buying for himself, whereas in fact he was acting as the agent of Watts. That both Watts and Jenkins knew at the time that defendants would not, if they knew it, have entertained any proposition coming from Watts.

Defendant set up the further defenses that the contract was void (1) because it tended to restrict the freedom of the press; (2) because it was in restraint of trade and contrary to public policy.

The order granted by the judge below is as follows:

" This cause coming on to be heard *at Chambers*, at Oxford, on July 29, 1895, and having been heard upon, affidavits, pleadings and exhibits filed, including the affidavit of B. N. Duke, filed by permission of the court, the court doth consider and adjudge that the temporary restraining order heretofore granted against Mrs. M. H. Fairbrother be and the same is hereby vacated for the reason that she disclaims by her answer any intention on her part to violate any of the terms of the contract executed by her and said Al Fairbrother Dec. 29, 1893, a copy of which is annexed to the complaint; she will recover her costs and disbursements made herein. The court doth further consider and adjudge that upon the plaintiff executing a justified bond in the sum of fifteen hundred dollars, conditioned as required by law, with sureties to be approved by the clerk of the superior court of Durham county, the said defendant, Al Fairbrother, be and he is hereby restrained, enjoined and forbidden to edit, print or be in any way connected with any newspaper or magazine published in the State of North Carolina, until the final hearing of this cause, and this cause is retained for further orders."

The pleadings, affidavits and exhibits were very volu-

minous, but the foregoing synopsis is deemed sufficient for a comprehension of the facts which form the basis of the opinion of the Court.

The defendant, Al Fairbrother, appealed.

*Messrs. Fuller, Winston & Fuller, Boone, Merritt & Bryant* and *Shepherd, Manning & Foushee,* for plaintiff.

*Mr. Wm. A. Guthrie,* for defendants (appellants).

AVERY, J. : Where a person acquires a reputation for skill and learning in his profession as a lawyer or a physician, he often creates an intangible but valuable property by winning the confidence of his patrons and securing immunity from successful competition for their business. So, where an editor, by reason of his style, his power, his pathos, his humor, his learning or of any gift or attainment, attracts subscribers solely by such personal qualities, he imparts a peculiar value to the good will and property of a newspaper which goes with him, to its injury, when he leaves it and lends the talent and accomplishments that have given it patronage and popularity to a rival journal in the same vicinity. Where he owns the press and plant the enhanced value so imparted by him becomes an element of his property with the same incidental power to dispose of it as attaches to any other of his acquisitions. which has a market value. *Beal v. Chase,* 31 Mich., at p. 529. But it is not like other property which ordinarily passes by delivery or assignment to the purchaser. Neither an editor, a lawyer or a physician can transfer to another his style, his learning or his manners. Either, however, can add to the chances of success and profit of another who embarks in the same business in the same field by withdrawing as a competitor. So that the one sells and the other buys something valuable, and the policy of the law limits the right to enter into such contracts of sale.

only to the extent that they are held to injure the public by restraining trade. The one sells his prospective patronage and the other buys the right to compete with all others for it and to be protected against competition from his vendor. The law intends that the one shall have the lawful authority to dispose of his right to compete, but restricts his power of disposition territorially so as to make it only co-extensive with the right to protection on the part of the purchaser. To the extent that the contract covers territory from which the vendor has derived and will probably in future derive no profit or patronage, it needlessly deprives the public of the benefit of open competition in useful business and of the services of him who sells without any possible advantage to his successor. When the reason upon which a law is founded ceases, the rule itself ceases to operate. The older cases in which the courts attempted to fix arbitrarily geographical bounds beyond which a contract to forbear from competition would not be enforced, have given way to the more rational idea of making every case dependent upon the surrounding circumstances, showing the extent, as to time and territory, of the protection needed. *Nordenfelt* v. *The Maxim, &c., Co.,* appeal cases, 1894, (L. R.,) 535 ; *Hitchcock* v. *Cocken,* 6 Ad. & E., (En. C. L. R.,) at p. 106 ; *Hernshoff* v. *Bontenean,* 17 R. I. Rep., 3 ; *Benefit Co.* v. *Hospital Co.,* 11 L. R. A., 437 ; *Beal* v. *Chase,* 31 Mich., 490 ; *Tallis* v. *Tallis,* 1 El. & Bl., 391, (18 E. L. & E., 151) ; *Oregon, &c., Co.* v. *Minsor,* 20 Wallace, 64 ; 10 Am. & Eng. Enc., 947, note ; 3 Am. & Eng. Enc., 885, note ; *Gibbs* v. *Gas Co.,* 130 U. S., 396.

Where the nature of the business was such that complete protection could not be otherwise afforded, the restraint upon the right to compete has been held good in one or

more instances where it extended throughout the world, and in other cases where it applied to a state or to a boundary including several states.

In *Nordenfelt* v. *Maxim, &c., supra*, the plaintiff had covenanted with the respondent company "not to engage, except on behalf of such company, either directly or indirectly, in the trade or business of a manufacturer of guns or ammunition, or in any business competing or liable to compete in any way with that carried on by such company." On appeal to the House of Lords the case of *Horner* v. *Graves*, 7 Bing., 743, was cited and the validity of such contracts was declared to depend upon the question " whether the restraint is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interests. of the public." LORD HERSCHELL, L. C., said further:. " Whatever restraint is larger than the necessary protection of the party can be of no benefit to either. It can only be oppressive, and if oppressive it is in the eye of the law unreasonable. The tendency in later cases has certainly been to allow a restriction in point of space, which formerly would have been thought unreasonable, manifestly because of the improved means of communication. A radius of 150 or even 200 miles has not been held to be too much in some cases. For the same reason I think a restriction applying to the entire kingdom may in some cases be requisite and justifiable."

In *Beal* v. *Chase, supra*, at p. 530, Judge CAMPBELL quotes with approval the language of Chief Justice CHAPMAN in *Morse* v. *Morse*, 103 Mass., 77, where he said : " In this country there are periodical publications that have a very wide circulation, and it is obvious that a purchaser of the proprietorship cannot afford to pay the full value unless he can obtain from the vendor a valid restriction against

COWAN *v.* FAIRBROTHER.

competition, which restriction shall be as extensive as the interest requires, though it may cover the whole of a State or the whole of a country. The same would be true as to some books. For example, the author of a popular school book could not sell its proprietorship for its full value unless he could bind himself not to prepare another book which should be used in competition with it."

The rule which concedes the right to make the area in which the vendor is to be restricted from competition as broad as is necessary to afford ample protection to the purchaser, is subject to the qualification that no agreement will be upheld which is injurious to the public interest. *Nordenfelt* case, *supra*, at p. 549. There are two familiar classes of contracts, that will in no event be enforced because contrary to public policy, and these constitute exceptions to the general rule governing sales of the right of competition : 1. A *quasi* public corporation cannot disable itself by contract from performing the public duties which it has undertaken to discharge in consideration of the privileges granted to it. *Logan* v. *Railroad*, 116 N. C., 940 ; *Gibbs* v. *Gas Co.*, 130 U. S., 410. 2. Any agreement in contravention of the common or statute law generally, or any combination " among those engaged in a business impressed with a public or *quasi* public character which is manifestly prejudicial to the public interest, is void as against public policy, and upon the same principle no agreement tending to create a monopoly or designed to utterly destroy fair competition amongst public carriers will be enforced." *State* v. *Oil Co.*, 34 Am. St. Report, 541 (49 Ohio St., 137); *Emery* v. *Candle Co.*, 21 Am. St. Rep., 819, and note (47 Ohio St., 320); *Hooker* v. *Vandewater*, 47 Am. Dec., 258 (4 Denio, 349).

But the contract, of which the plaintiff claims the benefit as assignee through John Jenkins, is one which in no

way affects the public, unless it unreasonably deprives the people of the State of the benefit of the industry of the defendants, or unnecessarily precludes them from support ing their family by pursuing their occupation. *Oregon Nav.* v. *Windsor*, 20 Wallace, at p. 68. The stipulation was that the defendant Fairbrother " would not edit, print or conduct a newspaper, nor be in anywise connected with one printed anywhere in the State of North Carolina, and that for a like period Mrs. Fairbrother shall not edit, print or conduct a newspaper or magazine, nor be in any-wise connected with one anywhere in the County of Durham, said State, without the consent of said purchaser or his assignees." This contract was assigned to Watts and Duke by Jenkins, and the assignees who own the property have leased to the plaintiff Cowan, who is now publishing the *Globe* newspaper, and seeks to enjoin the defendant Al Fairbrother and the other defendant from publishing another newspaper in Durham, as it is conceded they propose to do if the court should not interfere. Since the use of steam, space has been in a measure annihilated, and it is a fact, of which the courts may take notice, that a newspaper may be carried by mail to the most remote parts of the State within from 24 to 48 hours. So that, if there has ever been a time in the history of the State when an editor could not acquire a reputation for excellence in some particular line of that business, which would enable him to give a paper, with which he might be connected, popularity throughout its limits, there is no reason to doubt now that one, who would rid himself of a competitor in that business, is not describing an unreasonable boundary when he extends the restriction against competition to the State lines. No better proof of that fact could be adduced than is set forth in the uncontradicted affidavits of the defendants themselves, that they injured their

successor John Jenkins in the conduct of the Durham *Globe*, after the contract was enteied into, by publishing a paper in Lynchburg, Va. If the right to compete for popularity as an editor may become valuable and pass by a contract of sale, like the good will of a newspaper, it follows necessarily as a logical sequence that the purchaser may sell and transfer to a third party the right to occupy a field vacated by a dangerous rival, and the transaction would be held valid for the same reason that renders the original sale enforcible. 3 Am. & Eng. Enc., p. 885, and note, with authorities collected; *Beal* v. *Chase, supra.; Perkins* v. *Clay*, 54 N. H., 518; *Hedge* v. *Lowe*, 47 Iowa, 137; *Gampers* v. *Rochester*, 56 Pa. St., 194. It is settled law that such contracts, in restraint of trade, as are valid, may be enforced in equity, like other contracts, and that breaches of them will be restrained by injunction, on the ground that no other remedy is adequate. 3 Am. & Eng. Enc., 885, and note; *Thompson* v. *Andrus*, 73 Mich., 557. A covenant on the part of a publisher not to publish a paper is considered in the same light as a contract to sell a particular business, or the right to practice a profession in a given area, and courts of equity will interpose in order to prevent a violation of the one as well as of the other. 10 Am. & Eng. Enc., 947, note.

The plaintiff's lessors swear that they had never abandoned at any time the purpose to continue the publication of the newspaper, and that during the suspension they kept up continual negotiations with that end in view. They say further that the suspension was prolonged by giving an option to one with whom they had good reason to expect they might conclude a contract to again issue it regularly.

A review of all the cases, where it has been held that

parties have abandoned rights, will furnish no analogy to support the contention that the benefit of a contract, like that which is the subject of the action, must be deemed in law abandoned for failure to find a suitable editor for so short a time, especially where it appeared that reasonably diligent efforts were being made to have the business continued. . The concealment by Jenkins of the fact that he was buying for another was not *per se* a fraudulent act, and there is no allegation on the part of defendants that he practiced any fraud upon them. Fraud cannot be inferred from the fact of buying property through an agent who is instructed to take title in his own name. If the defendants had set up a state of facts, which in law amounted to fraud, and had asked the court to rescind the contract upon the principle that he who asks equity must do equity, they would have been required to offer to return the money received. In order to avail themselves of that remedy they should have brought suit to set aside the agreement upon the discovery of the fraud, if there was fraud, and should have offered to place the purchasers in *statu quo. Cal., &c., Co.* v. *Wright,* 8 Cal., 585, 592.

It is contended for defendants that the contract is illegal and void because it is in contravention of the provision of the Constitution, (Art. I., Sec. 20,) which guarantees the freedom of the press. When the framers of our Constitution declared that the freedom of the press was one of the bulwarks of liberty, and therefore ought never to be restrained, but that every individual should be held responsible for the abuse of the same, they entertained no purpose to restrict the power of any person to dispose of anything of value, which, as the creature of his own mental or physical exertions, had become his property. This right is as much a fundamental one as is that to use the press without violation of reasonable laws intended to

118—27

protect  others  from  libel  and  slander.   In  its  broadest
sense,  freedom  of  the  press  includes  not  only  exemption
from  censorship,  but  security  against  laws  enacted  by  the
legislative  department  of  the  government,  or  measures
resorted  to  by  either  of  the  other  branches for  the  purpose
of  stifling just criticism  or  muzzling  public opinion.   Black
Const. Law,  pp.  472, 473;  Cooley  Const.  Lim.,  pp.  517,
518;  Ordinaux  Const.  Leg.,  p.  236 *et seq.*;  3  Story  Const.,
p.  731.   An  indefinite  number  of  authorities  might  be
cited  to  show  the  universal interpretation  placed  upon  the
provision in  the  Constitution  of  the  United  States  that  the
freedom  of  the  press  shall  not  be  abridged,  and  upon  simi-
lar  clauses  in  state  constitutions.   It has  never  been  held
anywhere  that  these  provisions  could  be  made  engines  of
oppression  by  construing  them  as  restrictions  upon  the
right  to  sell anything  of  value,  that  is  the creature of  one's
brain,  provided  society  would  not  be  made  to  suffer  by  the
transaction.    Upon  a  review  of  all the  assignments  we  dis-
cover  no  error  in  the  rulings  below,  and  the  judgment  is
therefore  affirmed.

Affirmed.