FRANCIS W. MARSH ET AL. *vs.* CHARLES B. WHEELER ET UX.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A member of a commercial or trading partnership is presumed to have authority to pledge the credit of his firm in the emission of negotiable business paper, while no such presumption exists in the case of a nontrading partnership. This distinction is not purely arbitrary, but has an underlying reason and purpose which should not be overlooked when an application of the rule to any given situation is attempted.

A partnership whose business so involves buying and selling—whether incidentally or otherwise—that it naturally includes the employment of capital, credit, and the usual instrumentalities of trade, and frequent contact with the commercial world in dealings which, in their character and incidents, are like those of traders generally, is a commercial or trading partnership.

The business of the partnership in question was the taking and execution of plumbing contracts. The firm had no store, but made frequent and extensive purchases and sales of fixtures and fittings in the fulfillment of its undertakings. *Held* that it was a commercial or trading partnership, within the meaning of that term as used in this connection.

Notice to an agent, of a fact outside the scope of his agency, does not affect his principal.

An employee of the plaintiffs' bank, whose duties and relation to it the finding failed to disclose, casually learned of the dissolution of a partnership, but did not communicate that information to the plaintiffs. *Held* that under these circumstances the law would not impute the employee's knowledge of such dissolution to the plaintiffs.

Argued November 9th—decided December 16th, 1904.

ACTION to recover the amount of a promissory note and to set aside certain conveyances of real estate alleged to have been made in fraud of creditors, brought to the Court of Common Pleas in Fairfield County and reserved (*Curtis, J.*), upon an agreed statement of facts, for the advice of this court. *Judgment advised for plaintiffs.*

The copartnership of C. B. Wheeler & Co. was organized in 1896 and dissolved May 31st, 1900. Its members were Charles B. Wheeler, Charles B. Marsh and Edward H. Marsh. The two latter comprised another copartnership known as Marsh Brothers, engaged in the building trade. The purpose of the partnership of C. B. Wheeler & Co. was described in the partnership articles as "carrying on the plumbing business." It "conducted a business of taking plumbing contracts, and used a shop in Bridgeport for its work, while its bookkeeping and the financial part of the business was done in the office of Marsh Brothers. . . . It had no store and purchased only goods as it needed to fulfil its plumbing contracts. It did not buy and resell plumbing goods or any goods." The partnership articles made it the duty of Marsh Brothers "to attend to the general business of the concern, such as making all purchases, collecting bills, and any work in connection with the office work." Marsh Brothers were also required to give the new firm all their plumbing work, if market prices thereon were met, and to give the use of their office free of rent for the office work of the business. It was made the duty of Wheeler to superintend the practical work of the firm. The articles contain no express provisions as to the utterance or indorsement of commercial paper.

September 8th, 1898, Charles B. Marsh signed the name of Wheeler & Co. to a negotiable note for $650, payable to Marsh Brothers one month after date at the plaintiffs' banking-house. He indorsed said note in the name of Marsh Brothers and took it to the plaintiffs, who are bankers, for discount to the credit of Marsh Brothers. The plaintiffs discounted the note and placed the proceeds to the credit of Marsh Brothers on their account. This note was there-

Marsh v. Wheeler.

after renewed monthly until October 24th, 1900, save that the amount was from time to time reduced by payments made by Charles B. Marsh, leaving the amount due thereon at that date $230.

On November 10th, 1899, another note of like tenor, but for $350, was similarly executed, indorsed, presented and discounted. This note was renewed monthly like the former until said October 24th, 1900, when, partial payments having been made by Marsh, $190 was due thereon.

On October 24th, 1900, Marsh paid $10 on the notes and renewed both by one note for $410, being the amount then due on said two notes. This note was on November 26th, 1900, renewed for $400, $10 being then paid. This last note is the one in suit.

All the notes in these series were of similar tenor except as to the amount, and the amount in the case of each renewal was the amount of the note taken up less the amount of payments thereon. All were executed, indorsed, brought to the plaintiffs' bank, discounted, and the proceeds applied, in precisely the same way, and all payments thereon were made by Charles B. Marsh, who alone came in contact with the plaintiffs in the matter. At the time each note was given and discounted, Wheeler & Co. owed Marsh Brothers on book account sums in excess of the amount of the notes, and that indebtedness still continues. No credit was given on this account for the sums received from the discount of said notes.

Wheeler was ignorant of the existence of the notes and the transactions relating to them, until shortly before suit was brought. He gave Marsh no express authority to execute the notes, beyond such as might be claimed from the partnership agreement; neither did he ratify Marsh's acts in relation thereto. No course of business on the part of the partnership was proven from which authority to Marsh to sign the notes could be implied.

May 31st, 1900, the firm of C. B. Wheeler & Co. was dissolved by mutual consent. No formal notice of the dissolution was sent to the plaintiffs, and the plaintiffs had no

knowledge or notice of such dissolution, except such as can be inferred from the fact that on August 1st, 1900, Wheeler, having formed another partnership relation for the conduct of the plumbing business, called at the plaintiffs' banking-house and, having stated to an employee that he wished to open an account, one Judson, an employee of the plaintiffs, met and made certain inquiries of him. Wheeler told him that he wished to open an account in the name of Wheeler & Ball. Judson asked if he was the same Wheeler who was with Marsh Brothers as C. B. Wheeler & Co., to which Wheeler replied affirmatively, and added that they had dissolved partnership and he was going into business with Ball. Thereupon an account was opened in the name of the new firm of Wheeler & Ball, which account continued for ten months.

All the facts relating to the nature of the business of C. B. Wheeler & Co., not appearing in the copartnership articles, were testified to by Wheeler against the plaintiffs' objection that the only evidence admissible to show the nature of the partnership business was the articles of agreement. It is agreed by counsel that if the objection was well taken, such facts as are founded upon the inadmissible testimony should be disregarded.

The action is brought against Wheeler and his wife. The complaint alleges that certain conveyances of real estate, formerly standing in the name of Wheeler and now in the name of his wife, were fraudulent as to the plaintiffs, and the court was asked to set the same aside. Upon the trial this prayer for relief was abandoned. .

*John C. Chamberlain*, for the plaintiffs.

*Bacon Wakeman*, for the defendants.

PRENTICE, J. The question which naturally first presents itself in this case is as to whether or not the two notes bearing the name of C. B. Wheeler & Co., which the plaintiffs·

held at the time of the dissolution of said partnership, May 31st, 1900, were, in the plaintiffs' hands, paper upon which Wheeler & Co. was obligated.   It is conceded by both parties that any such obligation is, under the facts found, solely dependent upon authority in Charles B. Marsh to make and utter negotiable promissory notes in the name of the firm.

The plaintiffs contend that the articles of copartnership gave him express authority to that end.   This the defendants deny.   This claim, which rests upon a very slender foundation, may be disregarded.

Upon the question of implied authority the defendants rely upon the distinction recognized in *Pease* v. *Cole*, 53 Conn. 53, between commercial or trading and nontrading partnerships, and the further distinction, also recognized in that case, between the two classes of partnerships, in that the power of one partner to pledge the credit of the partnership in the emission of commercial paper is presumed with respect to trading and not presumed under ordinary conditions with respect to nontrading partnerships.   So far there is no difference between the parties as to the law, and as respects the legal consequences of the facts found there is such a concurrence of view that the question of implied power resolves itself into the narrow one as to the class of partnerships to which that of Wheeler & Co. belonged, to wit, whether it was a trading or nontrading one.

A trading partnership is one which buys and sells; but buying and selling need not be its sole purpose, nor even its most characteristic feature.   A partnership for the conduct of a manufacturing or mechanical business is none the less a trading one for the reason that buying and selling in the market is only one of its incidents.   George on Partnership, 92.   In *Kimbro* v. *Bullitt*, 63 U. S. (22 How.) 256, 268, the rule is stated as follows: " Wherever the business, according to the usual mode of conducting it, imports, in its nature, the necessity of buying and selling, the firm is then properly regarded as a trading partnership."   Another statement of the principle is found in several authorities, to wit: " If the

partnership contemplates the periodical or continuous or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured shape, it is a trading or commercial partnership." Bates on Partnership, 327 ; *Baxter* v. *Rollins*, 48 Amer. St. Rep. 432, 439 note; *Randall* v. *Merideth*, 76 Tex. 669.

But in whatever language the distinction between the two classes of partnerships is expressed, it is not to be forgotten that it is not a purely arbitrary one, but has an underlying reason and purpose which should not be overlooked when an application to any given situation is attempted. This reason and purpose have their origin in a need on the part of certain partnerships arising out of the kind and manner of their business, and the absence of such need on the part of others, and in the interest of the commercial world into contact with which the business of the one class brings it and that of the other does not. *Pease* v. *Cole*, 53 Conn. 53 ; *Kimbro* v. *Bullitt*, 63 U. S. (22 How.) 256 ; *Holt* v. *Simmons*, 16 Mo. App. 97 ; Story on Partnership, § 102a. So it is with respect to those partnerships the nature of whose business naturally comprehends certain courses of dealing, that the law says that they belong to the class denominated commercial or trading. These are those whose conduct so involves buying and selling, whether incidentally or otherwise, that it naturally comprehends the employment of capital, credit, and the usual instrumentalities of trade, and frequent contact with the commercial world in dealings which in their character and incidents are like those of traders generally.

If we turn now to the case of Wheeler & Co. we find a partnership whose business was the taking and execution of plumbing contracts. It conducted no store over whose counter articles it had bought were sold. Whatever buying and selling it did was that incident to the execution of plumbing contracts as a stated business. It is common knowledge, however, that the execution of plumbing contracts in these modern days involves extensive purchases in the market of

fixtures and fittings of large cost. These are not bought for use by the buyer, but to be disposed of for money. The value of that which is bought enters as a large factor into the receipts of the contractor. The value of labor necessary to the adaptation of the purchased articles to their intended uses will also become a factor. But that makes no difference. The sale is not required to be of the articles in the same form as when purchased.

It thus appears that the firm carried on a business which contemplated frequent and extensive purchases, not as incidental to an occupation or for use, but for the distinct purpose of selling again in an adapted or applied, if not the original, shape; and that its business, therefore, carried it frequently into the market and brought it into contact with the commercial world in transactions naturally involving the use of credit and the usual instrumentalities of trade. Its business being of such a character, it was a commercial or trading partnership within the meaning of that term as used in this connection.

In view of these conclusions the plaintiffs' objection to the admissibility of testimony requires no consideration.

We have next to consider the validity in the plaintiffs' hands of the note sued upon, which is neither of those hereinbefore determined to have been valid, but the last of a series of renewals thereof. Marsh, at the time that this note was made and discounted, was not a partner of Wheeler. The firm of Wheeler & Co. had been dissolved some six months before its date, and before several of its predecessors in the line of renewal had been given. The plaintiffs, however, had no notice of the dissolution, unless the same was inferrable from the circumstance that upon an occasion prior to the date of the note Wheeler went to the plaintiffs' banking-house for the purpose of opening an account for a new partnership into which he had entered, and there met an employee of the plaintiffs named Judson, who made certain inquiries of him, and that in response thereto he told Judson that he was the same Wheeler who had been a member of Wheeler & Co., that that firm had been dissolved, and that

he had formed another partnership for which the new ac-
count was desired to be opened.   The finding was evidently
intended to express the idea, and counsel have so treated it,
that the plaintiffs had no knowledge of the dissolution, and
dealt with Marsh, in the matter of the renewals thereafter,
in good faith, in the belief that the firm still continued and
in reliance upon its assets and responsibility, unless the con-
trary should be inferred from the facts recited.

" Notice to an agent, to bind the principal, must be within
the scope of the agent's employment, and notice to him of
any fact outside the scope of his agency will not affect his
principal."   *Trentor* v. *Pothen*, 24 Amer. St. Rep. 225, 233
note; *Farmers & Citizens Bank* v. *Payne*, 25 Conn. 444;
*Smith* v. *Board of Water Commissioners*, 38 id. 208; *Farrel
Foundry* v. *Dart*, 26 id. 376; *Willard* v. *Buckingham*, 36 id.
395; *Platt* v. *Birmingham Axle Co.*, 41 id. 255; *Mc Gurk* v. *Met-
ropolitan Life Ins. Co.*, 56 id. 528; *Ward* v. *Metropolitan
Life Ins. Co.*, 66 id. 227; *Mechanics Bank* v. *Schaumburg*,
38 Mo. 228; *McCormick* v. *Wheeler, Mellick & Co.*, 36 Ill.
114.

It will be noticed that the statement made to Judson was
incidentally made, and was not intended as a notice of dis-
solution.   All that the finding discloses of this man, who
thus casually acquired the information imparted by Wheeler,
is that he was an employee of the plaintiffs.   That he was
not a janitor or errand boy is perhaps to be implied from the
circumstances of the meeting and the character and apparent
purpose of his inquiries.   It would appear that his duties
brought him into connection with depositors and their ac-
counts.   Perhaps he was a teller.   However this may have
been, there is absolutely nothing in the finding to indicate
even presumptively that his employment related to the bank's
discounts, or comprehended within its scope anything which
had to do with the Wheeler & Co. notes or obligation, or
which gave him any knowledge that there were such notes
or obligation.   Whether his principal's responsibility be de-
termined upon the theory of the legal identity of the princi-
pal and agent, or as arising from the duty which the agent's

relation and the circumstances imposed upon him to communicate his information to his principal, the law under these circumstances does not impute Judson's knowledge of the dissolution of Wheeler & Co. to the plaintiffs. His information is not shown to have been of a fact within the scope of his agency.

The Court of Common Pleas is advised to render judgment for the plaintiffs to recover the amount due upon the note in suit.

The costs in this court will be taxed in favor of the plaintiffs.

In this opinion the other judges concurred.