BURKE v. CANFIELD et al.

No. 7607.

United States Court of Appeals for the
District of Columbia.

Decided April 28, 1941.

See, also, 111 F.2d 526.

George E. Sullivan, of Washington, D. C., for appellant.

Lawrence Koenigsberger, of Washington, D. C., for appellee Canfield.

Richard E. Wellford, of Washington, D. C., for appellee Wellford, as guardian ad litem.

William J. Neale, of Washington, D. C., for appellee Taltavull.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The District Court revoked letters of administration issued to appellant Burke and ordered that certain costs be assessed against him personally. The appeal has been taken to review these actions. The principal question concerns accountability for the value of the good will of a funeral business owned and operated by the decedent, Ellen Taltavull, at the time of her death in 1935. It is claimed that the administrator permitted this to be appropriated by another without authority of court and without compensation. The business was originally owned and conducted by Warren Taltavull in his lifetime under the name "W. Warren Taltavull Funeral Home." Its location was on premises owned jointly by his wife, the decedent whose estate is involved here, and her sister Mrs. Grahe. Taltavull's family, including five minor children, resided in the upper portion of the building. Upon his death Mrs. Taltavull continued to operate the business much as it had been conducted before, but with the assistance of Francis Collins, who was employed as funeral director by her. Upon her death title to the premises vested by survivorship in Mrs. Grahe. She, her brother Burke, who is appellant here, Collins, and Sullivan, an attorney, agreed that the business should be continued by Mrs. Grahe, at least until it could be determined whether the estate could carry it on. Sometime later Mrs. Grahe and Collins agreed that he should act as manager and receive fifty per cent of the net profits for doing so.

Mrs. Grahe moved into the premises and assumed custody and care of her deceased sister's children.

Burke was appointed and qualified as administrator. In October, 1935, he filed an inventory, listing among other things stock and fixtures of the funeral business and automobiles used in it, though no mention was made of the good will. In December Burke sought authority from the court to sell the listed assets. The Register of Wills refused to recommend approval of the proposed order and filed a memorandum setting forth that the business should be sold as a whole, including the good will. The administrator's petition for sale was withdrawn. In July, 1937, another petition was filed seeking authority to sell the listed articles, but stating that the administrator had not felt justified in asking for authority to continue the business since that would involve probable losses to the estate. To support this the petition recited figures showing income of the business prior to Mrs. Taltavull's death, but they did not take account of the rental value of the premises or the value of her services. The administrator claimed that these, if considered, would indicate a probable loss. The petition also stated that he and Mrs. Grahe had agreed on the sale of the listed items, apparently to her, and that a portion of the purchase price would be paid as rent until the court should authorize the sale.

The Register of Wills also refused to approve this petition. His memorandum stated that an accounting of the estate was past due, that its assets appeared to have been used by Mrs. Grahe without any authority of court, and that no provision had been made for the good will. He recommended that a guardian ad litem be appointed to represent the interests of the five minor heirs. The guardian ad litem, upon appointment, filed a petition asking that Burke be removed as administrator and some impartial person be appointed in his stead who might take action against Mrs. Grahe and others who had intermeddled with the estate. The petition set out the facts concerning the agreement to continue operating the business after the decedent's death and charged that no provision had been made to preserve the value of its good will. It was charged that the statements of the net income in Burke's petition for sale were false and known by him to be so, that the true income was greatly in excess of his figures, and that he knew when he filed the petition that Mrs. Grahe

had conducted the business at a profit of more than $21,000 between May, 1935, and December, 1936. It was charged also that the accounting was false for failure to include any income from the business, that all these things had caused great loss to the estate, and that by his actions the administrator had allowed Mrs. Grahe to intermeddle in the assets of the estate to its injury.

Appellant's response to the rule to show cause set forth that Mrs. Grahe became the owner in fee simple of the business premises at the decedent's death; that the nature of the business made its success dependent upon its location; that in this case zoning restrictions made it impossible to obtain a new location in that region; that appellant had relied upon the advice of counsel in making the agreement with Mrs. Grahe; that soon after his appointment and qualification he had investigated completely the possibility of continuing the business at a profit to the estate and concluded that it could not be done; and that counsel had advised him the showing would not warrant asking the court for authority to continue it. The answer also denied knowledge of the profit made by Mrs. Grahe, and the charges of intermeddling. The court directed an audit of the business and the auditor's report showed profits of about $41,000 realized from the time of the decedent's death. Exceptions were taken that the auditor had failed to consider the rental value of the premises and the services of Mrs. Grahe and Collins.

After hearing, the court found that there was a good will of the business which had a value and was an asset of the estate, that Mrs. Grahe and Collins had intermeddled and therefore each became an executor de son tort, that Burke had aided and abetted them in doing so, that he knew or should have known that the business was being operated at a profit, and that by failing to report the profits in his accounting he aided in concealing the intermeddling and the profits realized from it. Burke was removed as administrator and Canfield, appellee here, was appointed administrator de bonis non. Thereafter costs were assessed against Burke personally.

During the later course of the proceedings Mrs. Grahe notified the administrator to remove the estate's property from the premises. She also discontinued use of the name "Taltavull Funeral Home," removing the sign bearing it from the premises and notifying the administrator of these facts.

Thereafter a petition was filed seeking permission to file an additional petition for new trial, reciting these facts and alleging that the administrator de bonis non had made no attempt to sell the name or the good will. The petition was denied, as was the original one, and the objections to the assessment of costs, after it was modified in part, were overruled.

Numerous errors are assigned, but may be resolved into three issues which are sufficient to dispose of the case. The principal question is whether there was a good will of the business which was an asset of the estate and had value sufficient to make it the subject of intermeddling. The others relate to whether the court had power under the statutes and facts to remove the administrator and the effect to be given to the court's failure to separate its findings of fact and conclusions of law, as required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Before discussing the issues, it may be noted that the entire course of conduct which is in question, including the course of administration, up to the time of Burke's removal was very much of a family affair. Burke, Mrs. Taltavull and Mrs. Grahe were brother and sisters, the minor heirs were nieces and nephews of Burke and Mrs. Grahe, and Collins was employee or partner of both the decedent and Mrs. Grahe. They acted in harmony, such as would be fit families in dealing with such matters more frequently than, unfortunately, occurs. They were careful also to act with the advice of counsel, and the record shows, we think, that all acted in accordance with what they considered the best interests of the minor children, who were the real beneficiaries of the estate. Mrs. Grahe particularly showed her solicitude for their welfare, by taking the places of their parents, commendably assuming a responsibility which many in her position would have avoided. That she has discharged it with success and affection is shown by the fact that one of the children, Peter A. Taltavull, on attaining his majority, has appeared independently and urged that what she has done is not only lawful but evidence of her affectionate interest in them. Mrs. Grahe has testified that she has not used any of the proceeds of the business for her own or her husband's benefit, but has expended all of it on the children and on the home she has maintained for them, except that she got "something to eat out of it." There is no reason to disbelieve this statement. The case therefore is one not colored by any element of intentional fraud or misconduct. If there has been intermeddling it has been innocent, due to ignorance concerning legal rights and powers rather than to design to do wrong. But innocence of motive cannot entirely absolve one who oversteps the boundaries prescribed by the law for dealing with a decedent's estate, and if that has occurred here the responsibility for it must be accepted by those who have crossed the line, however unintentionally.

## I.

The principal questions concern the findings of the trial court that the business had a good will, that it had some value and was an asset of the estate, and that at least technically it had been intermeddled with.

It is not necessary to consider exhaustively what constitutes good will.[1] It is of course characteristic of a going business and essentially is constituted in the tendency of customers to return for trade to those with whom they are accustomed to deal. Many and varied elements may hold out the lure to return. They include an established trade name, a specific or general location, a reputation for service, personal attention, reasonable prices, etc. For most purposes good will must be dealt with legally in connection with the business of which it has been said to be parasitic.[2]

There can be no question that there was a good will, or that it had value, during the lifetime of Mrs. Taltavull. Her death did not terminate it. The business continued thereafter and profitably. The evidence is undisputed that net profits from Mrs. Taltavull's death to the date of the auditor's report amounted to about $41,000. Though this figure did not take account of rental value of the premises or of the value of Mrs. Grahe's and Collins' services, a reasonable allowance for these items in all probability would have left a fair margin of profit. The business was conducted under the name of "Taltavull Funeral Home"

[1] Cf. Macfadden v. Jenkins, 1918, 40 N. D. 422, 169 N.W. 151, 154–156.

[2] Washburn v. National Wall-Paper Co., 2 Cir., 1897, 81 F. 17; cf. Metropolitan Nat'l Bank v. St. Louis Dispatch Co., 1893, 149 U.S. 436, 13 S.Ct. 944, 37 L.Ed. 799.

until shortly before the order now on appeal was made. It was carried on with the stock in trade and equipment which were assets of the estate, the former being replaced from time to time as it was consumed. Collins, who had managed the business for Mrs. Taltavull, continued as manager and funeral director or partner with Mrs. Grahe. There was continuity in name, in management, in trade. The only interruption was in ownership. Furthermore, statements of Mrs. Grahe and Collins clearly show that the business name was of value in carrying on the business. These things laid the foundation for the court's finding that there was continuity of custom.

As against them appellant says that the business was largely of a professional nature, depending upon personal attention and service. The inference seems to be that because of this the good will died with the owner, in accordance with the view of some cases in relation to professional as distinguished from business good will. [3] The present tendency, however, is to the contrary, even in clearly professional cases, [4] but regardless of this the element of buying and selling of commodities in such a business is so large that for this purpose it cannot be classified as professional. [5]

It is most urgently insisted, however, that the good will had no value after the decedent's death. The basis for this is that Mrs. Grahe, having become sole owner of the premises on which it was conducted, could have ejected it immediately or at any time. There was no lease which gave the estate a right to have the business continued at that location. This, combined with the fact that the zoning restrictions allegedly made it practically impossible to acquire another suitable location in the vicinity, it is said, gave Mrs. Grahe the power to put an end to the business and therefore to destroy the good will. Accordingly it is urged that the good will had no value which could be sold or otherwise preserved for the es-

tate. This assumes that it had no value for any purpose and in effect disappeared at Mrs. Taltavull's death.

These facts of course have an important bearing upon the worth of the good will. But we cannot regard them as denuding it of value entirely. That it had value for continuance of operations is shown by the success which Mrs. Grahe and Collins achieved in carrying on the business. Even if it had no salable value to others, it was valuable to them and they put it to profitable use. In effect, though informally, the business and the good will were transferred to Mrs. Grahe at the conference among herself, Burke, Collins and Sullivan, held prior to Burke's appointment. She acquired every advantage which a purchaser of the business, with its good will, would have secured. She was in a strategic position to make use of these advantages, since she was the owner of the premises. But that fact and the further one that she might have destroyed the business completely by requiring its removal did not justify her in appropriating the value which the business and the good will had so long as it was allowed to remain. The power to destroy is not the same thing as destruction. Nor, in these circumstances, is destruction identical with appropriation. It is sufficient for purposes of requiring an accounting to the estate that the good will had value to those who intermeddled with it. That it may not have had value or may have had only a small value to others does not relieve them from accounting for the value which they received from it.

Furthermore, in the absence of a reasonable effort to obtain a buyer, it could not be assumed that none could be found, even in the face of the obvious difficulties which would confront an effort to sell under the conditions which existed here. Whether a buyer might be found was not a question for the private and unofficial decision of Burke, Mrs. Grahe and Collins. Application to the court for authority to sell and

[3] Cf. Cowan v. Fairbrother, 1896, 118 N.C. 406, 24 S.E. 212, 32 L.R.A. 829, 54 Am.St.Rep. 733.

[4] Cf. Macfadden v. Jenkins, 1918, 40 N. D. 422, 169 N.W. 151; Tichenor v. Newman, 1900, 186 Ill. 264, 57 N.E. 826; French v. Parker, 1888, 16 R.I. 219, 14 A. 870, 27 Am.St.Rep. 733; Slack v. Suddoth, 1899, 102 Tenn. 375, 52 S.W. 180, 45 L.R.A. 589, 73 Am.St.Rep. 881; Notes, 1909, 19 L.R.A.,N.S., 762; 1933, 82 A.L.R. 1034; 12 R.C.L. 978, § 2, and 983, § 6.

[5] Cf. Marsh, Merwin & Lemmon v. Wheeler, 1904, 77 Conn. 449, 59 A. 410, 107 Am.St.Rep. 40. In W. R. Speare Co. v. Speare, 1920, 49 App.D.C. 318, 265 F. 876, we sustained an injunction restraining as an unfair trade practice the use of a name in connection with a funeral business in such a manner as to lead the public to believe that the business was the successor to one formerly conducted by a decedent which, after his death, had been transferred to a corporation.

efforts to do so pursuant to the authority given constitute the method which the law provides and requires for determination of that question in relation to property which is part of a decedent's estate. It is a method which could have been followed easily in this case and, if it had been, the question whether buyers were available would have been settled once and for all. Difficulties, amounting even to practical impossibility, do not justify strangers to the estate, though they be closely related to its beneficiaries, in taking out of the hands of the court and into their own the determination of questions which the law has committed exclusively to the court's judgment. This is true although the interference be innocent and without intention to intrude upon the functions of the court. Although this may appear technical and to smack of legal red tape in certain applications, the temptations to intermeddle with decedent's property are so great that relaxation of the lawful and normal procedures for dealing with it in the course of administration would make it difficult to draw the line between innocent but mistaken intermeddlers and consciously guilty ones. Proper general administration of the probate laws requires that in matters of this character the bars not be let down and that persons take the risk of their innocent mistakes as well as of their intentional interferences in dealing with the property of the estate. [6]

The evidence is clear that Burke, both privately and as administrator, cooperated with Mrs. Grahe by permitting her to take over the business and operate it as her own. [7] That she did so is hardly disputed and is in entire accordance with appellant's theory concerning her rights. Burke was present at the conference before he was appointed as administrator and then became a party to the arrangement for Mrs. Grahe to take over the business and conduct it. He omitted the good will from his inventory. He refused to ask for authority from the court to sell the good will or the business as a going concern, although warned twice by the action of the Register of Wills concerning this. He included no statement of income from the business in his reports or accounting. In view of these facts he was equally responsible with Mrs. Grahe, if not more so, for her intermeddling.

■ In the light of what has been said previously it is no defense or justification for his conduct that Burke acted with the advice of counsel given and received, it may be admitted, in entire good faith, or that he himself acted, entirely apart from counsel's opinion, with complete bona fides. That both he and counsel thought that the business could not be operated at a profit and that a sufficient showing could not be made to secure the court's authority to conduct it, did not justify his failure to submit these questions to the court. [8] There is evidence, too, that in his investigation he did not audit the books himself, but relied upon statements of Collins as to the profits prior to Mrs. Taltavull's death, and that he did not inquire whether the business showed a profit from operations following it. Reasonable inquiry would have revealed the profitable character of the enterprise.

## II.

■■ Appellant urges that an administrator may be removed only where the cause is specified by the statute applicable in the District. Section 124, Title 18, D.C.Code (1929), provides that the probate court

---

[6] Cf. Earll v. Picken, 1940, 72 App.D. C. 91, 113 F.2d 150, 155, 161. Burke's position, at least, was one of confidence, which makes inappropriate permission of "the 'disintegrating erosion' of particular exceptions." Meinhard v. Salmon, 1928, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L. R. 1.

[7] Although she considered it as belonging to her, as is evidenced by her relation to and dealings with the administrator and his failure, in fact refusal, to include the good will in his inventory and to apply to the court for permission to sell the business as a going concern, Mrs. Grahe and Collins signed and filed partnership income tax returns, showing profits made from the business.

[8] The statute does not require that the administrator show probability of making a profit. Its language follows: "The probate court may, in its discretion, authorize any fiduciary, accountable to it, to continue the business of a decedent for a period not exceeding twelve months after decedent's death. No order shall be entered so authorizing a fiduciary until he shall have filed a petition under oath, supported by the affidavits of two reputable persons familiar with the decedent's business, setting forth the appraised value of the business, whether the decedent conducted it at a profit or loss and the approximate amount thereof, and the estimated amount of the expenses per month necessary to be incurred in order to continue the business." D.C.Code (1929), tit. 29, § 86.

"shall have full power and authority * * *for any of the causes hereinafter mentioned,* to revoke * * * letters of administration." (Italics supplied) Section 132 of the same title prohibits it "under pretext of incidental power, or constructive authority, [to] exercise any jurisdiction whatever not expressly given by this code." In Hawley v. Hawley, 1940, 72 App.D.C. 357, 114 F.2d 505, we held that unless power to remove an executor for a particular cause can be found in the statute, or by necessary inference therefrom, it does not exist. Appellee relies upon four provisions of the statutes[9] as expressly or by necessary inference authorizing removal in this case. We think Section 232 of Title 29, D.C. Code (1929), fully covers the present situation. It is so far as material: "No executor or administrator shall sell any property of his decedent without an order of the probate court authorizing such sale * *. If any executor or administrator shall sell, pledge, *or dispose of* any property without such previous order, his letters may be revoked and an administrator appointed * * *." (Italics supplied) We think the section is sufficiently broad to cover by necessary inference, if not perhaps expressly, any action by which an administrator permits another to take control of and appropriate to himself assets of the estate. In any event it should be applied to a situation where, as here, he not only has become actively a party to an arrangement by which another makes such an appropriation prior to his appointment, but during the course of his administration confirms it by refusing to include the property within his inventory, report, or account for the profits of the business, and to take steps to secure its recovery or legal disposition after full warning that this might be required. Perhaps Section 132 of Title 29 also could be held to include the facts of this case, though it is not necessary to determine the question.

■ We think it is clear, therefore, upon both the facts and the law, that the court acted entirely within its discretion and authority in removing appellant as administrator and in subsequently appointing the administrator de bonis non. It follows from this that the order for costs was properly entered.

■ In so holding we think it is appropriate to say that this ruling should cause no reflection upon appellant Burke other than flows from the fact that he innocently mistook the facts and the law and did so, we think, in the desire and effort to work out an arrangement which would be for the best interests of the children of his sister. Nevertheless, he has been guilty of technical violation of the law, which is a sufficient legal basis for his removal. We think too that the court in exercising its discretion whether the violation should be allowed to bring about removal quite properly could take into account the family situation which has colored and would have continued to color the entire proceedings. Burke was Mrs. Grahe's brother. It would have been his duty, had he been allowed to continue as administrator, to take action against her, either in negotiation or by filing suit, to secure an accounting of the value of the good will and the profits resulting from its appropriation by her. At best, this would have been a painful and perhaps an unbrotherly obligation. Furthermore, her interests were allied with his against those of the children in the matter of the accounting. The situation had become such that it was inappropriate that he should carry forward the administration. The court was entitled to consider these facts, together with the possibility that Burke's surety might become liable for his alleged mismanagement.

Although this appeal involves no question relating to the accounting either by Mrs. Grahe or Burke, in view of what may occur in respect to that question we think it not inappropriate to say that the extenuating circumstances to which we have referred should be taken into account in any negotiations for settlement or litigation towards that end. Both Burke and Mrs. Grahe acted in good faith, believing that they were within their legal rights and without intention to injure the estate. Mrs. Grahe has used the profits of the business largely, if not entirely, for the children's benefit. It may be taken as shown that she has made no charge for rent of her property, either for the business or for occupancy by the children as a home. Nor has she sought compensation for her services either in caring for them or in operating the business. Her attitude has been that of one standing gratuitously and faithfully in loco parentis, not of one seeking gain or advantage. Allowance therefore should be made for these items. The somewhat speculative character of the business, especially in view of the fact that Mrs. Grahe could have terminated

---

9 D.C.Code (1929) tit. 29, §§ 115, 132, 232, 261.

884

it at any time after her sister died, should produce caution in fixing the value of the good will for purposes of accounting. With this precautionary word, these matters may be left for the further consideration of the administrator de bonis non and the District Court.

Other contentions need not be considered, except to say that the failure to separate the findings of fact and conclusions of law in accordance with Rule 52(a) does not require reversal, especially in view of Rule 81 (a) (1), which provides that the Rules of Civil Procedure "do not apply to probate * * * proceedings in the District Court of the United States for the District of Columbia except to appeals therein."

· Peter A. Taltavull urges that if it was proper to remove Burke, he should have been appointed to succeed him as administrator, being the person entitled to preference under D.C.Code (1929) tit. 29, § 104. However, the statute specifically makes the appointment "subject to the discretion of the court," and we find no error in this respect.

The orders are affirmed.