## WALKER and Others *v.* THE OCEAN BANK.

Suit on a promissory note. The complaint averred, in the first paragraph, that the note was made by A, payable to B, at the *Ocean Bank,* and B indorsed it to C, who indorsed it to D, who indorsed it to said bank; and at maturity, it was duly presented at the place, etc., and payment demanded and refused, of which the defendants had notice, and that the law of *New York* provides, that, "all notes in writing, made and signed by any person, whereby he shall promise to pay to any other person, or his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed, and shall have the same effect, and be negotiable in

like manner, as inland bills of exchange, according to the custom of merchants. The second paragraph averred that the note was made by A, payable to B, at the same place, and that B, C, and D, then indorsed it, and delivered it to A, to be by him negotiated at said bank, at, etc., and that A on, etc., at said bank, etc., did negotiate, sell, and deliver the same to said bank, and also averred presentation, non-payment, notice, etc. The defendants, in their second defense, averred, that said notes are one and the same, and that the defendants were all residents of *Laporte* county, *Indiana*, and the note was made and indorsed there, and that, "by said indorsement, the defendants meant and intended to become bound only as indorsers, and not as makers of said note;" and when it became due, A had property sufficient, and was able to pay the same, but the plaintiff, "took no steps to collect the same from him, until December, 9, 1859, and they have not yet exhausted their remedy against him." The third defense was usury. Demurrers to the second and third paragraphs of the answer were sustained.

*Held*, that the second paragraph of the answer presents a good defense to the first paragraph of the complaint.

*Held*, also, that both paragraphs of the complaint were subject to demurrer, and that, therefore, the demurrer to the answer would reach back to, and embrace them, and should have been sustained.

APPEAL from the *Laporte* Common Pleas.

HANNA, J.—Suit on a promissory note.

*Answer*. 1. Denial. 2. That defendants were indorsers, and want of diligence, etc. 3. Usury. Demurrer to the second and third paragraphs of the answer sustained. Trial, finding, and judgment, for the plaintiffs.

The questions presented to us arise upon the rulings on the demurrers.

In the first paragraph of the complaint, it is averred, that the note was made by *Rose*, payable to *Walker*, at said *Ocean Bank;* that *Walker* indorsed it to *Organ*, who indorsed it to *Early*, and he to said bank; and that, at maturity, it was duly presented at the place where it was payable, payment

demanded and refused, of which the defendants had notice. And further, that, in *New York*, there is a statute as follows: "Sec. 1. All notes in writing, made and signed by any person, whereby he shall promise to pay to any other person, or his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed, and shall have the same effect, and be negotiable in like manner, as inland bills of exchange, according to the custom of merchants."

The second paragraph avers, that the note was made by *Rose*, payable to the same person and at the same place set forth in the first; that *Walker, Organ*, and *Early* then indorsed it, and delivered it to *Rose*, to be by him negotiated at said bank at, etc., and that said *Rose* on, etc., at said bank, etc., did negotiate, sell and deliver the same to said bank. Averment of presentation, non-payment and notice, etc.

The defendants answered, in the second paragraph, that said notes are one and the same; that said *Rose* and defendants were all residents of *Laporte* county, *Indiana*, and said note was made and indorsed there, and "that by said indorsements said defendants meant and intended to become bound only as indorsers, and not as makers of said note;" that when it became due, *Rose* had property sufficient, and was able to pay the same, but that plaintiff "took no steps to collect the same from said *Rose* until the 9th day of December, 1859, nor have they exhausted their remedy against said *Rose*," etc.

Third, this is an answer setting up usury, and specifically setting out facts, which, in view of the conclusion we have arrived at, it is not necessary to further notice.

Each paragraph of the answer is to the whole complaint. The second paragraph presents a good defense to the first paragraph of the complaint. Indeed, under the rulings in *Hunt* v. *Standart*, 15 Ind. 33, and *Rose* v. *President*, etc., *Id.* 292, the first paragraph of said complaint was subject

to demurrer, and therefore the demurrer to the answer would reach back and settle upon it, unless it is prevented from doing so by said answer being faulty as to the second paragraph of the complaint; which we had as well, therefore, examine now.

It is said that a promissory note has no legal inception, until it is delivered to some person, as evidence of a subsisting debt. *Catlin* v. *Gunter*, 1 Kernan, 368. *Marvin* v. *McCullum*, 20 John R. 288. *Powell* v. *Waters*, 8 Cowen's R. 669. *Hyde* v. *Goodenow*, 3 Comst. 266. And further, that until an accommodation bill or note has been negotiated, there is no contract which can be enforced on such note; the contract, either express or implied, that the party accommodated will indemnify the other, is, till then, conditional. 2 Man. & Gr. 911.

In view of these authorities, and the allegation in the second paragraph of the complaint, the question presents itself as to the meaning of the term *negotiate*, or, as averred, " to be by him negotiated at, and to, the said *Ocean Bank.*"

The word " negotiation," as used by writers upon mercantile law, means, the act by which a bill of exchange or promissory note is put into circulation, by being passed by one of the original parties to another person. " Negotiable " means that which is capable of being transferred by assignment; a thing which may be transferred by a sale and indorsement or delivery. This negotiable quality transfers the debt from the party to whom it was originally owing to the holder, when the instrument is properly indorsed, so as to enable the latter to sue in his own name, either the maker of a promissory note, or the acceptor of a bill of exchange, and the other parties to such instruments, such as the drawer of a bill, or the indorser of a bill or note, unless the holder has been guilty of laches in giving the required notice. It must, however, be payable to order, or bearer, and, at all events, in money only, and not out of any particular fund.

1 Cowen, 691. 6 *Id.* 108. 2 Wharton, 233. 3 J. J. Marsh, 174. 7 Taunt. 265. 3 B. and C. 47. 3 Kent Com., L. 44. 19 John. 144. 4 Blackf. 47.

In the case at bar, it appears, the note was made by *Rose* to *Walker*, by the latter indorsed to *Organ*, and by him to *Early*, who also indorsed it. Thus far, there is nothing showing but that the note was, in good faith, intended as evidence, etc., of a debt due from *Rose* to *Walker;* but after thus showing the indorsements, it is averred that, being so indorsed, said note was delivered to *Rose*, to be by him negotiated, etc. Now, can we say that the pleading is sufficiently certain in disclosing the character in which *Rose* was to act, and the title by which he then held the note? Can we say, by a just construction of this pleading, that the note was accommodation paper only, and that it was not evidence of a subsisting debt between the original parties thereto? If the words, "to be negotiated," imply only a negotiation for discount, or a putting in circulation, solely by way of a discount, of said paper, or loan obtained thereon, then the pleading is good. But if, in point of fact, the terms used would as well include a power given, by the last indorser, to *Rose*, to negotiate the said note, by a sale thereof, then the pleading is not good.

The decisions first above quoted, although made with reference to usury questions, would seem to fully sustain the propositions to which they are cited; but in the pleadings therein, the facts were clearly set forth, showing that the paper was not evidence of a subsisting debt until delivered to the person from whom a loan was obtained. In the case at bar, such indebtedness, between the original parties to the note, is not negatived. Can we say, that, in the absence of such direct averment, facts are pleaded showing such to be the truth of the case? Looking at the note and indorsements alone, the right of *Early* to maintain an action upon said note, etc., if it had been then due, would, at the time

it was delivered to *Rose, prima facie*, exist; *Munn* v. *The Com. Co.*, 15 John. R. 55. *Davis et al.* v. *Clemson*, 6 Mc-Lean. 627; therefore, the power of transfer, by sale, would remain as a consequence. To show that such power did not exist, and was not exercised, the averment was inserted that, after the indorsements, the note was delivered to *Rose* to be negotiated. But could not *Rose* be the agent of the last indorser, to negotiate a sale of the note, as well as to act for himself in negotiating a loan upon paper thus got up for his accommodation? The title to the paper, as held by the *Ocean Bank*, was derived from the indorsement of *Early*. If *Rose* could thus act as agent, it was the duty of the bank to inquire in what capacity he did act, in making a delivery of the note to said bank, whether for himself, in effecting a loan upon said paper, or for others, in making a sale thereof. The bank having possessed itself of this information, it appears to us we should likewise be put in possession of it, in the pleadings, which attempt to show that the persons who signed and indorsed this paper, were to be governed by the laws of a State, other than that where such indorsements. were made. Perhaps it might have been, *prima facie*, presumed by the bank that the paper offered by *Rose*, he being the maker thereof, was accommodation paper, if he had so offered it for discount, to obtain a loan upon it for his own use. *Powell* v. *Waters*, 8 Cowen, 689. But it is averred, in the same paragraph of the complaint, as a conclusion or result of this power to negotiate, that *Rose* " negotiated, sold, and delivered the said note to the said *Ocean Bank*," not that he procured it to be discounted. The distinction is important. If *Rose* could sell the note, and did in fact sell it, at a rate greater than seven per cent. interest, the contract would be valid; but if the note had no legal existence, as the evidence of a subsisting debt, until it was delivered to some person who loaned money upon it, then a delivery of this inchoate paper to the bank, upon an

agreement to reserve a sum greater than seven per cent., would render it void under the statute quoted in the paragraph of the answer setting up usury; and hence, the dignity of the averment that it was negotiated by a sale to the bank. If it had been accommodation paper, *Rose*, as an original party, could have procured its discount upon its delivery; but could not have sold it to avoid the statute of usury. It is manifest, then, that the averment of the manner in which he passed it off, shows that the paper had a legal existence, in his hands, when offered to the bank. This being the conclusion, it follows that the second paragraph of the complaint was bad, and the demurrer filed to the answer should have been sustained to the whole complaint.

If, in point of fact, the paper had a legal inception at the time it was given to *Rose* to be negotiated, then no question of usury can arise, for he could sell it at any rate in the market, if it was a sale in good faith. This is assuming that he could act as the agent of the legal owner, *Early*, in negotiating a sale and delivery of said note, upon the indorsement of said *Early*. To this we see no objection.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded.

*James Bradley* and *D. J. Woodward*, for the appellants.

*W. C. Hanna*, for the appellee.