EDWARD KNAPP ET AL. vs. THE TIDEWATER COAL COMPANY ET ALS.

Third Judicial District, Bridgeport, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

An accommodation indorser is one who indorses for another without receiving any consideration therefor. As such, he is exempt from suit at the hands of the person accommodated, whatever their relative positions on the paper may be, but his liability to others is the same as though he had indorsed for value, and is unaffected by notice to them of the character of the indorsement.

The defendant corporations, S and T, were closely related in ownership, management and business dealings, and S was engaged in selling coal at retail, buying it of T. The plaintiffs sold two lots of coal to T, and at its direction shipped it to S. In payment therefor T gave them two promissory notes, indorsed before delivery, by its procurement, by S. Thereafter these notes were replaced by similar notes, indorsed with S's name by C, its president. S had never dealt with the plaintiffs, but became, and apparently was still, indebted to T for the coal for which the notes were given. In an action on the renewal notes it was held: —

1. That as the original indorsements clearly were not made for the accommodation of the plaintiffs, and as those on the notes in suit were made under like circumstances, differing only in that they were made a month or two later, S was liable to the plaintiffs on them.

Knapp *v*. Tidewater Coal Co.

2. That even if the finding were changed to show that the latter indorsements were made, in the presence of one of the plaintiffs, to give the notes bankable value, this would not establish that they were indorsed after delivery, for the plaintiff's accommodation.

3. That *S*, as a trading corporation, had the implied power to become a party to negotiable instruments in the ordinary course and for the legitimate purposes of its business; and, while it could not lend its credit by accommodation paper, it would be presumed that the indorsements were properly made and were for a valuable consideration; and no facts appeared sufficient to overcome these presumptions.

4. That *S's* defense, that *C* had no power to make the indorsements, must be based not only on his lack of actual authority to do so but also upon the absence of apparent authority, in view of his official position, the nature of his duties and his previous known conduct; and that on this issue *S* had failed to sustain the burden of proof.

In an allegation that notes were indorsed "on or before negotiation", the words "on or before" exclude "after," and the word "negotiation" is a general term descriptive of all those acts by which a note is put into circulation, and may include delivery in issue, transfer by delivery, and transfer by indorsement.

The admission of an allegation of a complaint that notes were indorsed by a corporation is an admission of an authorized indorsement.

Where a party has assumed the burden of proof upon an issue and the case has been tried and decided upon that theory, it would be unfair for this court on appeal to regard the case from any other point of view.

Submitted on briefs October 27th, 1911—decided January 5th, 1912.

ACTION by the payees against the maker and indorsers of two promissory notes, brought to and tried by the Superior Court in Fairfield County, *Shumway, J.;* facts found and judgment rendered for the plaintiffs for $3,492 as against the defendant the Stamford Tidewater Coal Company, from which that defendant appealed. *No error.*

The plaintiffs, as copartners, are wholesale dealers in coal. The Tidewater Coal Company, a New York corporation, buys and sells coal at wholesale. Among its customers is the Stamford Tidewater Coal Company, a Connecticut corporation engaged in selling coal at retail. All of its coal is bought from the New York

company. Its capital stock is all owned by four persons, who are its directors. Of these four, one Bayard N. Cole is a stockholder in and director and president of the New York company. Another, R. V. Matthew, is a stockholder in and director of the New York company. Cole is president of the Stamford company.

About December 15th, 1909, the plaintiffs sold to the New York company certain coal, which they, upon its direction, shipped direct to the Stamford company. The purchase price was charged to the New York company, and the same was paid for with the note of that company. This note was paid in part by cash, leaving a balance of $995.57 unpaid. August 15th, 1910, this balance being still due, the New York company made its thirty-day note for that sum payable to the order of the plaintiffs, which note, having first been indorsed by Matthew and the Stamford company, was delivered to the plaintiffs in payment therefor. Under said date the Stamford company advised the plaintiffs in writing that its indorsement was in con-sideration of its receipt of the coal. Upon the ma-turity of this latter note, it was paid or replaced by another for the same amount and of the same tenor, but bearing the indorsement of one Pinkerton in addi-tion to that of Matthew and the Stamford company. The latter indorsement was made by Cole as its presi-dent. This note is that set out in the first count.

On or about June 30th, 1910, the New York company purchased of the plaintiffs other coal, and ordered it shipped to the Stamford company, which received it as the customer of the New York company. Through this purchase the New York company became indebted to the plaintiffs in the sum of $2,410.17. In payment of this indebtedness, the New York company delivered to the plaintiffs its two-month note for said sum, dated June 30th, 1910, payable to the plaintiffs' order, and

indorsed by Matthew and the Stamford company. Under the same date the latter company wrote the plaintiffs that its indorsement was in consideration of the receipt of the coal. September 26th, 1910, after the maturity of this note, it was paid or replaced by the second note in suit, which is one payable October 30th, 1910, for the like sum and of the same tenor as the former note. When delivered, it bore the indorsements, in the order named, of Matthew, Pinkerton, and the Stamford company, whose name was placed thereon by its president, Cole.

Nearly all of the business done by the plaintiffs with the two Tidewater companies was done with or through Cole, and the plaintiffs knew no other person in connection therewith. Coal ordered from the plaintiffs by Cole for the account of the New York company and shipped to the Stamford company was paid for sometimes by check of the former company, sometimes by that of the latter, and sometimes by Cole's personal check.

*Homer S. Cummings, Charles D. Lockwood* and *Albert Phillips,* for the appellant (defendant).

*Robert A. Fosdick,* for the appellees (plaintiffs).

PRENTICE, J. Copies of the two negotiable promissory notes upon which this action, in two counts, was brought, are annexed to the complaint. They show that the Tidewater Coal Company, a New York corporation, hereinafter referred to as the New York company, was the maker, and Edward Knapp and Company, the plaintiffs, the payees, and that the notes bore the indorsement, in order, of the two individual defendants, and of the defendant the Stamford Tidewater Coal Company, hereinafter referred to as the Stamford company, which last indorsement was made in the

name of the company "by Bayard N. Cole, President." The complaint alleges the execution of the notes by the New York company, that "on or before" their negotiation they were indorsed by the three defendants whose names appear thereon, that due presentment was made and notice given, that the plaintiffs still own them, and that they have not been paid. Upon the face of the notes and the strength of the averments of the complaint, all of which are admitted by the answer, the plaintiffs would be entitled to the judgment rendered. General Statutes, §§ 4233, 4234. To defeat this result, the Stamford company, which alone of the defendants appeared, sets up by way of special defense, first, that its indorsements were for the accommodation of the plaintiffs, and second, that they were made by Cole without authority from the corporation. Upon the trial an additional claim was made, apparently without objection that the pleadings furnished no basis for it, to the effect that the indorsements were *ultra vires* of the corporation.

An "accommodation indorser" is one who indorses without receiving value therefor, and for the purpose of lending his name to some other person. General Statutes, § 4199. His status as to such other person accommodated, and his liability to him, is very different from that which he enters into and assumes as to the other parties to the instrument. He is exempt from suit at the hands of the accommodated party, whatever their relative positions upon the paper may be. His liability, on the other hand, to other parties, is the same as though he was an indorser for value, and that liability is unaffected by notice to such parties of the accommodation character of his indorsement. General Statutes, §§ 4199, 4234; 1 Daniel on Negotiable Instruments (5th Ed.) § 790; Joyce on Defenses to Commercial Paper, § 279.

So in the present case if the appellant put its name upon the paper for the accommodation of the plaintiffs, as charged, the judgment is erroneous. If it did not, it would be none the less liable to the plaintiffs for the reason that it indorsed for the accommodation of the maker, and they had full knowledge of that fact, save as the accommodation character of the indorsement would bear upon the question of corporate authority, with which we are not now concerned. If the appellant indorsed at the request and for the benefit of the plaintiffs, its act, upon the facts found, was beyond question without consideration, and the indorsement one for their accommodation. The question here at issue thus becomes resolved into one of fact as to whether or not it was so made.

Both notes in controversy were given in renewal of prior notes of like amount and tenor, and bearing the names of the same indorsers save Pinkerton, whose name was not upon the notes taken up. These latter notes were indorsed before delivery, and by the procurement of the maker. They were delivered by the New York company in payment for coal sold by the plaintiffs to it, and by it ordered shipped to the Stamford company as its customer. In view of the circumstances, it certainly could not be claimed with any semblance of plausibility that they were indorsed by the Stamford company for the accommodation of the plaintiffs, with whom it had never dealt and to whom it owed nothing, and not for the benefit of the New York company, with which it was closely affiliated in ownership, direction, and business, with whom it had regular business dealings, from whom it had the very coal for which the notes were given in payment, to whom, for aught that appears, it was then indebted therefor, and which procured the signatures. The officers of the appellant, confessedly empowered to conduct its business, advised

the plaintiffs in writing at the time these notes were taken that the company's indorsements were in consideration of its receipt of the coal, and one of the individual indorsers was one of the directors of the two Tidewater companies.

The appellant relies upon what it conceives to have been a changed situation when the present notes were given, by reason of the lapse of time, the circumstances surrounding the renewals, and especially the order of those circumstances, for the maintenance of its position that the party accommodated in these instances was the plaintiffs.

The finding is that both the earlier notes were "paid or replaced" by new notes of the same tenor, and having the same maker and payee. With respect to the note set out in the first count, the finding clearly imports that when it was delivered it bore the indorsements now upon it, and that fact is unquestioned. With respect to the other, it is unequivocally found that when the replacement was made it was indorsed as now. The appellant asks that the finding in relation to this subject be corrected, so that it shall appear that this renewal note was offered for discount before indorsement by it, that, the cashier to whom it was so offered not being satisfied to accept it, Cole offered to place upon it the appellant's indorsement, and thereupon did so, one of the Knapps being present. We have been able to find no evidence justifying this statement of fact. But if there were such evidence, and the correction were made in the very language of the draft-finding, it would not suffice to change the statement of the finding that the new note, when delivered, bore the indorsement of the Stamford company. The two sets of facts are by no means inconsistent, and the result of the correction would not by any means be, as the appellant's counsel assume, to establish that the Stam-

ford company's indorsement was placed upon the note after it had been given and received by the plaintiffs, and in order to give it bankable character. Counsel for the appellant place great reliance upon this claimed order of events as showing that it was the plaintiffs, and not the New York company, for whom the indorsement was made. We have been able to discover no evidence establishing any such order, and it is suggestive that counsel were of the like opinion when they prepared their draft-finding, since they therein asked the court to find that the former note was "paid or replaced" by the present one bearing, among other indorsements, that of the defendant company as it now is.

It is also suggestive of the appellant's understanding, if not conclusive of the fact, that the answer expressly admits the allegation of the complaint that the note was indorsed by the several defendants on or before negotiation. "On or before" excludes "after," and "negotiation," as here used, signifies, and could only signify, delivery. Negotiation is a general term descriptive of all those acts by which a note or bill is put into circulation or passed on in its circulation, and includes delivery in issue, transfer by delivery, and transfer by indorsement. General Statutes, § 4200; *Odell* v. *Clyde*, 38 N. Y. App. Div. 333, 334, 57 N. Y. Supp. 126; *Walker* v. *Ocean Bank*, 19 Ind. 247, 250.

The circumstances attending the renewal indorsements thus appear to have been in no manner different from those which surrounded the earlier ones except that a period of one or two months had elapsed. The pertinence of this fact as bearing upon the question of for whom the indorsements were made is not apparent. Clearly the court was justified in reaching the conclusion that the appellant's indorsement was not made for the purpose of lending its credit to the plaintiffs.

Knapp *v.* Tidewater Coal Co.

The defense of *ultra vires* is one which the court below properly might have ignored, and for aught that appears did. But it was urged upon that court, apparently without objection, and upon us without objection. We will therefore give it consideration.

The appellant was a trading corporation in the fullest sense of that term. *Marsh* v. *Wheeler*, 77 Conn. 449, 453, 59 Atl. 410. As such, it had the implied power to become a party to negotiable paper in the due and ordinary course of its business, and for the authorized and legitimate purposes of that business. 1 Morawetz on Corporations (2d Ed.) § 350; Clark & Marshall on Corporations, § 181; *National Bank* v. *Young*, 41 N. J. Eq. 531, 535, 7 Atl. 488; *Monument National Bank* v. *Globe Works*, 101 Mass. 57, 58; *Jacobs Pharmacy Co.* v. *Southern B. & T. Co.*, 97 Ga. 573, 575, 25 S. E. 171. There is no such implied power to lend the credit of such a corporation to others through the agency of accommodation paper. *Credit Co.* v. *Howe Machine Co.*, 54 Conn. 357, 386, 8 Atl. 472. If the present indorsements were in excess of the authority of the corporation, it must have been for the reason that they were for purposes foreign to the due and legitimate conduct of its business, or without consideration.

The burden of establishing this defense of *ultra vires* rested upon the appellant who asserted it. *Credit Co.* v. *Howe Machine Co.*, 54 Conn. 357, 381, 8 Atl. 472. "When a corporation has a general power, express or implied, to be a party to bills and notes, such instruments will be presumed to have been executed in the legitimate course of its business, and whether so executed or not will be valid in the hands of a *bona fide* holder without notice." 1 Daniel on Negotiable Instruments (5th Ed.) § 386. Consideration will also be presumed. General Statutes, § 4194. It was incumbent upon the appellant to overcome these presumptions, and to

establish one of the conditions recited. It altogether failed to do so.

It proved that the coal in payment for which the original notes were given was, upon the order of the purchaser, the New York company, consigned directly to the Stamford company, as the former company's customer, and that the latter company thereupon became indebted therefor to the New York company; that at the time the original notes were delivered bearing the appellant's indorsements it advised the plaintiffs in writing that the indorsements were in consideration of its receipt of the coal; that the two Tidewater companies had such considerable and regular dealings with each other as was to be implied from the fact that the Stamford company bought its coal from the New York company, and that payment for this coal to the party from whom it was ordered by the New York company, who was frequently the plaintiffs, was sometimes made by checks of the Stamford company. Its own evidence, uncontradicted, was that the New York company financed the Stamford company's business, the latter company having no credit. There was nothing to indicate that the invoices of coal first referred to had ever been paid for to the New York company by the Stamford company, or that as a result of the latter company's purchases it was not largely indebted to the former, or to suggest that some arrangement based upon this indebtedness or relating to the financing of the defendant did not furnish the consideration for the defendant's name being placed upon the notes. Such a consideration would have been sufficient, and well might have existed. General Statutes, § 4195. The appellant left the trial court in a position where it was asked to override a legal presumption by a conclusion of fact for which no substantial foundation was furnished in the evidence. It is equally clear, and

for very similar reasons, that the court would not have been justified in finding that the indorsements were not made in the regular course of the appellant's business, and there were no facts upon which bad faith on the defendant's part could be predicated. *Craft's Appeal*, 42 Conn. 146, 154.

The third defense, which asserts Cole's want of power to indorse the notes in suit, is one which must rest not only upon the proposition that he was without authority to place the defendant's name upon commercial paper, but also upon the very different proposition that there was not, in view of his official position, the scope and character of his duties, and his previous known conduct, any such apparent authority as to justify the plaintiffs in accepting the notes indorsed by him under his official title, as bearing the indorsement of an authorized agent. 2 Morawetz on Corporations (2d Ed.) §§ 586, 587; 1 Daniel on Negotiable Instruments (5th Ed.) § 389; *Frost* v. *Wood*, 2 Conn. 23, 26.

The answer expressly admits the allegation of the complaint that the notes were indorsed by the defendant. This imported an admission of an authorized indorsement. Then follows the special defense which sets up affirmatively Cole's lack of power. At the beginning of the trial it was stated to the court by counsel that the only issue was whether or not the defendant's indorsement was for the plaintiffs' accommodation, and the plaintiffs, having presented the notes, rested. The defendant then proceeded to present its evidence in support of its defense. It thus voluntarily assumed the burden of proof, and the case was tried throughout upon the theory that it was incumbent upon the defendant to substantiate its freedom from liability for Cole's act. It is unnecessary to inquire whether or not this was the correct theory. Counsel acted upon it from first to last, and the court doubtless accepted the issue as

it was presented, and so decided it. It would manifestly be unfair for us to approach the question from any other point of view.

If the finding be examined to discover how far the defendant succeeded in supporting its position, there will be found no pertinent facts save that Cole was the defendant's president, that the plaintiffs never knew any other person than him in connection with the defendant's business, and that nearly all of their business with it was transacted with or through him. Among the facts which we are asked by the defendant to incorporate in the finding are matters bearing upon Cole's power in fact as between him and his principal, but none relevant to the ultimate inquiry of his apparent power. We cannot, therefore, upon the finding, either as it is, or corrected as asked, hold that the trial court was in error in ruling that the defendant had failed to sustain the burden it had assumed, and in basing its judgment upon the subordinate conclusion involved in it, that Cole's act of indorsement was one for which the defendant was bound. Were we at liberty to utilize, as bearing upon this matter, the evidence which is before us for a correction of the finding, ample justification for an implication of authority in Cole sufficient to warrant the plaintiffs in assuming its existence would be found in his own testimony offered by the defendant, and unquestioned and unqualified by other testimony, as to the character and broad scope of his agency as the defendant's chief executive officer. But the finding is silent upon these matters, and this testimony possesses interest only as it shows that injustice is not done through keeping to the course which counsel marked out for themselves and pursued.

The appellant asks for a correction of the finding in numerous particulars. Many of them involve conclusions of law or fact with which we have dealt. Some of

them involve statements of fact, either immaterial or clearly without sufficient foundation in evidence. A few relate to matters which are relevant to the issues. These have been noticed, and the appellant has been given the full benefit which could be claimed from them.

There is no error.

In this opinion the other judges concurred.