## JOSE SILVA RAMOS v. JOSE MARQUES ESPINOLA.

## No. 1718.

ERROR TO CIRCUIT COURT FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

ARGUED DECEMBER 17, 1926.          DECIDED FEBRUARY 7, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

TRESPASS QUARE CLAUSUM FREGIT—*pleading and proof of title.*

In an action of trespass *quare clausum fregit*, where plaintiff does not rely expressly on title by grant or of record, allegation in the complaint that the plaintiff is the rightful owner and seized in fee of a piece or parcel of land, describing it, is sustained by proof of title to said property by adverse possession.

TRIAL—*nonsuit—time for motion.*

Witnesses for plaintiff and defendant having been called, examined and cross-examined, and both parties having rested, it is not then too late for defendant to move for a nonsuit provided the defendant's evidence has not cured the defect complained of in plaintiff's proof.

OPINION OF PARSONS, J.

The plaintiff's complaint alleges in part:

"1   That the plaintiff is the rightful owner and seized in fee of a piece or parcel of land situate at Kaapahu, District of Hamakua, County of Hawaii, and being the upper half of Lot No. 33, Map 3 of the Kaapahu Homesteads, and fully described in Land Patent No. 4187, beginning at the upper boundary adjoining Lot No. 34, thence down on the east and west boundaries to certain points which joined together will contain nine and one-half (9½) acres. And that said points or boundary is marked by the side of the 30 ft. road by a post, thence on the wire fence crossing the said lot and bounded on the south west side, identified by locusts trees all of which belong to said upper half of the said lot which

middle boundary or fence was placed on or about the year 1898.

"2   That plaintiff herein has part of his land under cultivation in pineapples of about an area of six and a half acres, more or less, of the year 1925 crop.

"3   That plaintiff also has several fruit trees such as avocado trees and locust trees.

"4   That from the 30th day of March, A. D. 1924, and up to and including on or about the 19th of October, A. D. 1924, the defendant maliciously and wantonly destroyed the property of the plaintiff, viz: by tearing and breaking the fence of the plaintiff, by pulling and uprooting 608 pineapple plants and cutting down and totally destroying 8 locust trees, the property of the said plaintiff and growing upon said plaintiff's land without permission of the said plaintiff and contrary to law to the damage of the plaintiff in the sum of fifteen hundred ($1500.00) dollars."

Judgment is prayed in the sum last above named with costs. Plaintiff was later permitted to amend by substituting the word "loquat" for the word "locust" in the complaint (Tr. p. 11). As answer to the foregoing complaint the defendant entered a general denial.

Upon the issues thus joined the case proceeded to trial before a jury. Plaintiff introduced as his exhibits A and B title deeds to the upper half of lot 33, Kaapahu homesteads, described in his complaint as the land upon which the alleged trespass was committed, exhibit A being the deed of the same to himself by Manuel Correia and wife, dated August 2, 1920, and exhibit B being the deed of the same property to Manuel Correa by John da Silva and wife, dated August 7, 1897, said instruments bearing the registrar's certificate of record as of September 25, 1920, and August 17, 1897, respectively. No other muniments of title were introduced. Testimony offered for the purpose of identifying on the ground the land described in the complaint and in plaintiff's exhibits A and B and of locating the lower boundary of

said land will be discussed later in this opinion in connection with defendant's claims as to the insufficiency of such testimony.

Certain testimony, later to be considered, tending to show open, adverse and continuous possession of said premises for more than ten years last past, by the plaintiff and his predecessors in interest under claim of right and color of title, was also introduced, as was testimony as to the acts of trespass on the part of defendant alleged in the complaint and as to the measure of damages to the plaintiff occasioned by said acts.

Before the close of plaintiff's case the defendant, with plaintiff's consent, called one witness who was examined and cross-examined upon the question of damages only.

Plaintiff having rested, defendant moved for a nonsuit upon the following grounds: "First, that plaintiff has failed to prove title to the property from which the pineapple plants were taken or upon which the trespass is alleged to have occurred; secondly, that the plaintiff has failed to show that the land from which the pines were taken and the fence removed was the land included in the deed in evidence; thirdly, that the plaintiff has failed to prove that the land upon which the trespass is alleged to have occurred was land owned by him; fourth, that the plaintiff has failed to prove a proper measure of damages; and, lastly, that the plaintiff has failed to prove facts sufficient to constitute a cause of action" (Tr. p. 71).

The defendant then rested and renewed his motion for a nonsuit upon the grounds above set forth, which motion was granted by the court by oral order setting forth no specific grounds therefor, in conformity with which order judgment of nonsuit was thereafter entered.

Plaintiff assigns as error the granting of said motion and the entering of said judgment.

At the outset we are confronted by the question of the *theory* upon which the case was presented, contested and decided in the court below. Defendant admits the removal by himself of the pineapple plants and trees referred to in the complaint and in plaintiff's testimony but claims that they were growing on his side of the boundary between the upper half and the lower half of said lot No. 33. This admission was made by defendant's counsel orally at the trial (Tr. pp. 40 and 70) and is contained in his brief (pp. 1 and 2), where his claim of ownership is asserted.

Defendant says (brief p. 2) : "The sole issue in this case was therefore the question of title to the property upon which the alleged trespass occurred, and the case was presented in the lower court upon that issue." Again defendant says (brief pp. 2 and 3) : "From the very outset the case was tried upon an issue of title. The plaintiff alleged title in his complaint. Counsel for the plaintiff in his opening address to the jury submitted his theory of the case as presenting an issue of title, and stated to the jury 'We will endeavor to prove to your satisfaction that Mr. Ramos is the rightful owner of the premises'" and then follow references to statements of counsel for plaintiff and defendant on pages 2, 3 and 13 of the transcript. Counsel's opening statement to the jury referred to by defendant is not contained in the record presented. The transcript (p. 2) shows that upon objection to a question asked plaintiff upon direct examination, defendant's counsel said: "If the court please, this is an action in trespass, where the title to property is involved. The matter of title is a matter directly in issue and that is going to be the issue in this case." The transcript discloses no reply by plaintiff's counsel to the

foregoing statement at the time it was made. Later (Tr. p. 3) defendant objected to a question asked the same witness as to the pineapples cultivated on a portion of lot 33, on the ground that sufficient foundation had not been laid for the question, and the objection was sustained. Then occurred the following colloquy: "Q What happened to your pineapples? Mr. Russell: Same objection, if the court please. The court: Same ruling. (To Mr. Ferry) Show title to the property. Mr. Ferry: I am going to show title to the land." Later (Tr. p. 13) counsel for plaintiff made the following statement: "The question in an action for trespass is to prove title. Plaintiff has proved title. The next thing he has got to do is to prove those damages."

Defendant's statement hereinabove quoted, that the case was tried in the circuit court upon the theory of an issue of title, while not *expressly* concurred in by plaintiff in his briefs, is nowhere disputed or questioned by the plaintiff so far as the record, the briefs or oral argument disclose; nor does plaintiff deny that in the trial court he undertook the burden of proving in the first instance that legal title to the land from which the pineapple plants were taken was in himself. On the contrary he submits that evidence sufficient to sustain a finding of title in himself was before the jury. No contrary theory is presented now. This being true "the theory of the action which was adopted by the trial court with the acquiescence of the parties will govern in the appellate court for the purpose of review, unless the demands of public policy interfere with the application of that rule, or unless it is necessary to disregard the rule in order to prevent manifest injustice or unless the theory assumes that the court had jurisdiction when it was not conferred by law." 21 Ency. Pl. & Pr. 664. None of the foregoing exceptions to the rule last above

cited, so far as the record discloses, are applicable to the case at bar.

Within the limitations above set forth, where both parties give to a pleading the same construction at the trial that construction will be adopted by the appellate court. *Id.* 666.

Within the same limitations, where a cause has been tried upon the theory that the pleadings are at issue or that a particular issue is made by the pleadings or where an issue is tacitly accepted by all parties as properly presented for trial and as the only issue the appellate court will proceed upon the same theory. *Id.* 667.

Said the supreme court of Iowa in *Dickson* v. *Yates,* 194 Ia. 910, 188 N. W. 948, 27 A. L. R. 533 (quoting from p. 538): "This cause was submitted on the theory that a finding of conspiracy was essential to recovery from either defendant, and this must be treated as the law of the case for the purposes of this appeal." See also *State* v. *Hope,* 8 L. R. A. (Mo.) 608; *American Tobacco Co.* v. *Werckmeister,* 207 U. S. 284, 52 L. Ed. 208, 12 Ann. Cas. 595; *Phillips* v. *Phillips,* 186 Ala. 545, 65 So. 49, Ann Cas. 1916D 994. The last cited case was an action of forcible entry and detainer. Quoting from the text: "The whole course of the trial and the judgment itself showed that the issue was upon the title, as in ejectment, and we would be impelled to so regard it here." Again quoting from 21 Ency. Pl. & Pr. p. 668: "A party who, with the acquiescence of his adversary, assumes the burden of proof of an issue will be held to that position on appeal." The portion of the text last above quoted is adopted by the ninth circuit court of appeals in *Kentucky Vermillion M. & C. Co.* v. *Norwich Union Fire Ins. Soc.,* 146 Fed. 695. Quoting from the text of the last cited opinion, p. 702: "The plaintiff in error alleged in its complaint

that 'plaintiff kept a constant night and day watchman on duty' at the premises insured, which averment was denied in the answer of the defendant in error. The plaintiff in error, assuming it to be essential on its part to prove its averment in this respect, produced testimony to establish the fact, and, failing to obtain sufficient evidence on this point, upon appeal claims that the burden of such proof rested upon the defendant in error. This contention cannot be sustained. The general rule is"— and then follows the quotation from 21 Ency. Pl. & Pr. 668, last above set forth, with a citation of text and footnote. To the same effect are the decisions in *Knapp* v. *Tidewater Coal Co.,* 85 Conn. 147, 81 Atl. 1063; *Russell* v. *Chicago M. & St. P. Ry. Co.,* 191 N. W. (Ia.) 806. Quoting from the text in the *Knapp* case above cited: "At the beginning of the trial it was stated to the court by counsel that the only issue was whether or not the defendant's indorsement was for the plaintiffs' accommodation, and the plaintiffs, having presented the notes, rested. The defendant then proceeded to present its evidence in support of its defense. It thus voluntarily assumed the burden of proof, and the case was tried throughout upon the theory that it was incumbent upon the defendant to substantiate its freedom from liability for Cole's act. It is unnecessary to inquire whether or not this was the correct theory. Counsel acted upon it from first to last, and the court doubtless accepted the issue as it was presented, and so decided it. It would manifestly be unfair for us to approach the question from any other point of view." See also 2 R. C. L., title "Appeal and Error," subtitle "Theory of Case Below," Sec. 156, pp. 183, 184.

As to the method of ascertaining the theory of the trial: "The appellate court will consider any pertinent circumstance shown by the record, such as the form of

objections to evidence or the absence of such objections, * * * the form of the defense pleaded, the character of the evidence introduced, the statements of counsel on the trial or in the briefs filed or arguments made on appeal or statements in the assignments of error." 21 Ency. Pl. & Pr. p. 669. In *Smith* v. *Barnes*, 51 Mont. 202, Ann. Cas. 1917D 330, it was held that resort may be had to proceedings subsequent to the pleadings to ascertain on what theory the case was tried in the court below.

Defendant further alleges (brief p. 2): "The theory on which this case was presented in the trial court made it incumbent upon the plaintiff to prove his title as in an action in ejectment," citing in support of this proposition the case of *Mew Kung Tung* v. *Wong Ka Mau*, 8 Haw. 557. The text relied upon by defendant is quoted from page 559 of the last named report as follows: "It is true that an action of trespass does not necessarily involve the title, its gist being the injury to the possession; but title may be involved, and, from the way the case was put to the jury, it is clear that what was equivalent to the plea of *'liberum tenementum,'* or justification under special plea of title, was made by the defendants, and the issue for the jury to pass upon was whether the fishery of 'Auiole' extended to or near the middle of the west loch, or whether it was limited to the shallow water near the shore whose depth was up to a man's chin. The defendants contended for the 'chin deep' principle; the plaintiffs contended that the fishery of 'Auiole' was an exception to this principle. It was, then, the plaintiffs' case to put in all competent evidence in chief to sustain the boundaries of the fishing right as claimed by them, and the defendants having closed their case, it was not rebuttal to offer evidence of a former adjudication of a fishing right in another

part of the lagoon, or to establish the exemption claimed for 'Auiole' of the 'chin deep' principle. These facts were what the plaintiffs' witnesses had endeavored to establish in chief, and it would have been cumulative evidence and not rebuttal if put on after the defendants had closed. Where the title is the issue in an action of trespass it becomes similar to the action of ejectment, and the burden is upon the plaintiff to prove his title."

No opinion need be expressed as to the extent to which *Mew Kung Tung* v. *Wong Ka Mau, supra,* would have been followed in the case at bar if the defendant's theory of issue of title and burden of proof had been contested at the trial by plaintiff and the question had been presented and argued to this court.

The plaintiff having assumed the burden of proving title in himself, the next question is: "Did he offer sufficient evidence on that point to entitle him to have the same submitted to the jury?"

In support of the first, second, third and fifth grounds for motion for nonsuit set forth in full in an earlier part of this opinion, the defendant urges in effect, among other things, that plaintiff's evidence fails to identify the land from which the plants were taken and the fence removed as within the boundaries of the land described in plaintiff's complaint and in exhibits A and B, to wit, the *upper half* of said lot 33 or that said land so described was owned by the plaintiff.

Defendant in his brief (pp. 4 and 6) admits that exhibits A and B describe the land as set out in the complaint. The transcript shows that when the plaintiff was on the witness stand, after referring to a lot numbered 33 containing 9½ acres upon which he had cultivated pineapples, he was asked on direct examination by his counsel: "Q You got this land from whom? Mr. Russell: Same objection and also upon the ground it is

incompetent and not the best evidence. The court: Over-ruled. Mr. Ferry: Q You got it from whom? A Manuel Correia. Q Did he give you a document, deed? A Yes. Q I will show you this document. (Handing a paper to the witness) See if you recognize it, identify it. A (Examining the same) Yes. * * * Q And this document purports to allege a conveyance between Mr. Correia to you of the land in question, which Mr. Correia sold? A Sold to me. This is the land we fight this case." The instrument thus referred to was, over defendant's objection, then admitted and marked "Plaintiff's Exhibit 'A' " (Tr. p. 4). The following excerpts are quoted from the transcript: Upon direct examination of plaintiff (Tr. pp. 5 and 6) "Mr. Ferry: Q After you saw what was done on your land, trees cut down and pineapples, did you have any conversation with Mr. Espinola about that? Did he telephone to you or you speak to him about it? A Well, I telephoned to him. He says he did. I told him 'What business you have to do that' and he says 'I been run out the boundary.' He can't run out that boundary. I knows that boundary for 27 years, with line of trees. I hauling cane from that lot about 20 years. When we pass we open, when we get through, we close up again." Upon direct examination of the same witness (Tr. pp. 11 and 12) : "Mr. Ferry: Q Now, those trees you call 'monka' trees, that is what you call loquats? A Yes. Q That is a fruit tree, is it? A Fruit tree. Q Any of those trees destroyed? A Those trees destroyed, about nine trees, boundary trees, destroyed. That is the first thing destroyed. Q Were those trees yours, too? A That is on the boundary. Q That is not yours? A Well, that is on the boundary. I don't know who has planted these on the boundary. I suppose Manuel Correia plant those trees on the boundary. Q During this time that you have testified to, did you

claim those trees? A I claim the trees and I take the fruit. Mr. Russell: Your honor, I object to it on the ground it is leading; secondly, that it calls for the conclusion of the witness. The court: Overruled. It is leading, though. Mr. Ferry: Q Now, you say it was on the boundary, the boundary of the land, Correia's land? A Yes. Q Same Correia's land sold to you? A Same one."

Transcript pp. 13 and 14: "Mr. Ferry: Q During this time, say 26 or 27 years, up to 1924, October or March, 1924, did any other person claim ownership or have anything to do with those fruit trees? A Never claimed it."

Upon direct examination of Manuel Freitas, Jr., a witness for the plaintiff (Tr. pp. 44-48): "Q You know Mr. Ramos, the plaintiff, and Mr. Marques Espinola, the defendant? A Yes, I do. Q Do you know the place, their land, where they have lands adjoining each other at Paauilo, Hamakua? A Yes, I do. Q That is at Kaapahu Homesteads? A Yes. Q Since the—Oh, how long have you known that lands? A I have known that land about 27 years, more or less. Q 27 years, more or less. Do you know the land in question in this case? A Yes. * * * Mr. Ferry: Q Who occupied, who was in possession of that land? Who held the land, if you know? A Yes. Q Who occupied that land? Who occupied that land? Who had possession? A Manuel Correia. Q Is that the whole of that land, the whole of Lot 33? A No, part of that land. Q Part of that land, the land that was occupied by Manuel Correia? Do you know who is occupying that land or was occupying it in 1924? A Mr. Ramos occupied it. Q That is the same land Mr. Ramos occupied now is the same land occupied by Mr. Manuel Correia, as far as you know? A Exactly. Q And who was Mr. Correia's neighbor, that is, adjoining him? He owned part of that land. Who owned the

other part? A Of this same lot you mean? Q Yes. A The other part is owned by Frank Teixeira. Q Is that Frank Teixeira any relation to the defendant? A Yes, sir. Q Is that the land of Frank Teixeira that is the same land in question now, is it? A Yes, sir. Q Do you know the boundaries of those two portions of that lot? A Yes, sir. Q How do you know the boundaries and is there anything to indicate the boundaries? A Well, I worked with the surveyor that surveyed that land. After these people had been arguing for some time, this party, Manuel Correia, was not satisfied where the boundary was and he hired this surveyor by the name of Dove. When he surveyed the land, it cut down in places two or three feet, but if there has been any fence put through there since I left that place, I could not go there today and say 'This is the position where the surveyor marked' because I have been away from there over 20 years. Q And how long ago was it that you were there with the surveyor? A About 25 years. Q Twenty-five years ago? A Yes. Q When you went with that surveyor was there any posts dividing that land? A I am not quite sure about it. Q You are not? A If there were any posts there, I am not sure about it. Q Do you remember visiting the land after this action was instituted? A Yes. Q Do you recall identifying any of the old posts now standing as being the old boundary? A I was out there last August and there was a mark right along the boundary of old weeds, which anybody could see that was an old fence there and there was also a few pieces of the posts in the ground, a little bit off the ground. Posts had rotted off, here and there, far apart. Q And that is the same boundary today that divided, that you saw the same day the action was brought, same post, same fence that was dividing the land of Mr. Espinola from Mr. Marques or Mr. Teixeira?

A I would say—No, I could not say that. Had there been a fence put up since I left the place, naturally anybody could see there was a fence. I couldn't say that was the fence that was put here when I surveyed the land because 20 years is a long time. I wouldn't testify that was the same boundary that was left there by the surveyor. Q You saw the old boundary? A I saw lots of old weeds that stood there where the fence was and also stumps of the posts that were there. Q You identified that as being the old boundaries? A Most naturally you can see that was the fence there. Q I am asking you if you identified it? A No, I will not testify to that. How do I know if there was any fence put up since I left the place? I have been away from there over 20 years. Q Did you not identify it when you were there? A I did not testify it was exactly the place. It looks like the old boundary. I can't say this is the place where the surveyor left the pins. Q You saw the plants of pineapples? A I did. Q From your observations are those pineapples on the land occupied by Mr. Ramos or land occupied by Mr. Marques? A According to the old fence, the pineapples are on the land occupied by Ramos. Q You did not see any recent fence there at all? A No. Q All you saw was old posts? A Few stumps of posts, far apart. Q The pineapples were on Mr. Ramos' side of that fence, were they? A Yes."

The testimony set forth above and exhibits A and B in connection with other evidence in the case, constituting more than a scintilla, were sufficient to entitle the plaintiff to have the same submitted to the jury, under proper instructions, upon the question of possession by the plaintiff and his predecessors in interest of the land described in the complaint, under color of title and claim of right, openly, adversely and continuously for a period of more than ten years prior to the filing of the com-

plaint, and upon the question of the identity of the land thus described with the land upon which were growing the pineapple plants and fruit trees destroyed by the defendant.

Defendant contends in effect that the allegation of title in plaintiff's complaint cannot be sustained by proof of title by prescription and cites the case of *Mendes* v. *de Cova*, 22 Haw. 636, as authority for the following proposition set forth in the syllabus: "Where plaintiff relies expressly on a title by grant or of record he must prove it and evidence of a title otherwise derived is inadmissible."

In the case at bar the record does not disclose that the plaintiff relies expressly on a title by grant or of record and this fact differentiates it from *Mendes* v. *de Cova*. Other facts differentiate the two cases. In *Mendes* v. *de Cova* defendant excepted to two instructions given at plaintiff's request and assigned as error the giving of said instructions. Said the court (p. 639): "We are of the opinion that the jury were misdirected in the court below. In neither of the above instructions is the jury told that in order to entitle plaintiff to recover it was necessary for him to prove that the trespass complained of was committed on the lands described in the declaration, but they were told, in effect, that if they believed plaintiff, under an agreement with defendant as to the boundary line between their lands, had acquired title by adverse possession to certain lands, on which defendant thereafter trespassed (irrespective of whether the trespass was committed on the lands described in the declaration), they should find for the plaintiff. A careful reading of the transcript of evidence in this case fails to disclose any substantial evidence which identifies the land where the trespass is alleged to have been com-

mitted as any portion of the close described by metes and bounds in the declaration."

As to the kind of title sufficient under the circumstances of this case hereinabove recited to sustain plaintiff's claim: "It is conceded by all the authorities that the adverse possession of land maintained for the statutory period vests the possessor with title thereto," not only as against strangers but even as against the former owner thereof, "as effectively as if there had been a formal conveyance and the holder of the title thus acquired if ousted of his possession * * * may maintain ejectment to recover the premises." 9 R. C. L. 849.

In *Leialoha* v. *Wolters,* 21 Haw. 304, upon writ of error to review a judgment of nonsuit entered in an action of ejectment, this court, in reversing the judgment, held (p. 307) that from the evidence presented by the plaintiff the trial court could have found, *inter alia,* that Mauliawa (predecessor in interest of the plaintiff) "acquired title to the land in controversy by adverse possession."

The plaintiff's contention, in support of which he cites the case of *Halawa Plantation* v. *County of Hawaii,* 22 Haw. 753, to the effect that after the introduction of Cabrinha's evidence for the defense, the defendant's motion for nonsuit came too late to be entitled to consideration, is without merit. The testimony of Cabrinha, defendant's only witness, was upon the question of damages only and not upon the question of title and it did not cure any defect in plaintiff's case. Both parties had rested when the motion was finally submitted. Said this court, in *Scott* v. *Kona Development Co.,* 21 Haw., on page 421: "A motion for a nonsuit may be granted even though made, as this was, at the close of the case, provided only that the defendant's evidence does not cure the defect complained of in the plaintiff's proof," citing *Brown* v.

*Ins. Co.,* 59 N. H. 298; *Cooper* v. *Waldron,* 50 Me. 80; *White* v. *Bradley,* 66 Me. 254; *Fort* v. *Collins,* 21 Wend. 109 and *Jansen* v. *Acker,* 23 Wend. 480. The sentence last above quoted is decisive of the same point in the case at bar.

The fourth ground of defendant's motion for nonsuit, i. e., "that the plaintiff has failed to prove a proper measure of damages," has not been presented or argued to this court. The transcript shows sufficient evidence of elements of actual damage to require the submission of the question of damage under proper instructions to the jury.

For the reasons hereinabove set forth the trial court erred in sustaining defendant's motion for a nonsuit and in entering judgment thereon. The judgment of nonsuit should be reversed and the cause remanded for a new trial.

*J. S. Ferry* (also on the briefs) for plaintiff in error.

*J. W. Russell* (also on the brief) for defendant in error.

### CONCURRING OPINION OF PERRY, C. J.

It is unnecessary to consider to what extent, if at all, the appellate court is under obligation to decide a case upon the same theory upon which it was tried below. The decision of this court in *Mew Kung Tung* v. *Wong Ka Mau,* 8 Haw. 557, rendered in 1893 and not since reversed or qualified, in which it was held that "where the title is the issue in an action of trespass it becomes similar to the action of ejectment and the burden is upon the plaintiff to prove his title," was followed by the trial court, which granted a nonsuit on the ground, in part at least, that the plaintiff had failed to prove title. The defendant contends in this court that the plaintiff did not adduce any evidence of title in himself.

The plaintiff contends, not that the decision in the *Mew Kung Tung* case is erroneous and that the burden was on the defendant to prove his own title, but that he, the plaintiff, did adduce evidence of title.  As clearly shown in the opinion of Mr. Justice Parsons, the plaintiff did in fact present *prima facie* proof of title by adverse possession and in any view of the law the nonsuit should not have been granted.  If the burden was on the defendant to prove title, he did not meet it; if it was on the plaintiff,—whether because that was the law in any event or because this court is compelled to adopt the theory upon which the trial was conducted,—the plaintiff did satisfy that requirement.

In all other respects I concur in the reasoning of Mr. Justice Parsons and in the conclusion that the judgment appealed from should be reversed and the case remanded for a new trial.

### CONCURRING OPINION OF BANKS, J.

I agree with the chief justice that it is not necessary, in deciding the instant case, to commit the court to the doctrine of the "theory of the case" which is discussed in the opinion of Mr. Justice Parsons.  Assuming that by alleging he was the owner of the land in question the plaintiff took upon himself the burden of proving that he had the legal title thereto, it was reversible error to grant the defendant's motion for a nonsuit for the reason that the plaintiff introduced evidence tending to show that he had acquired such title by adverse possession. This evidence should have been submitted to the jury. I think this is all that is necessary to be decided on this point.  I agree with the remaining portions of Mr. Justice Parsons' opinion.